124 Cal.Rptr.2d 507 (2002)
29 Cal.4th 53
52 P.3d 685
EQUILON ENTERPRISES, LLC, Plaintiff and Appellant,
v.
CONSUMER CAUSE, INC., Defendant and Respondent.
No. S094877.
Supreme Court of California.
August 29, 2002.
*509 McCutchen, Doyle, Brown & Enersen, Leslie G. Landau, San Francisco, Colleen P. Doyle, Los Angeles, Deborah A. Nolan, Matthew Moran, Robert A. Brundage, Margaret Prinzing and Alison R. Beck, San Francisco, for Plaintiff and Appellant.
Pillsbury, Madison & Sutro and Michael J. Steel, San Francisco, for California Chamber of Commerce and Chemical Industry Council of California as Amici Curiae on behalf of Plaintiff and Appellant.
*510 Mehrban, Ghalchi & Yeroushalmi, Yeroushalmi & Ghalchi, Kamran Ghalchi, Reuben Yeroushalmi; Law Offices of Morse Mehrban and Morse Mehrban, Los Angeles, for Defendant and Respondent.
Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Craig C. Thompson, Acting Assistant Attorney General, Theodora Berger, Assistant Attorney General, Matthew F. Lintner and Edward G. Weil, Deputy Attorneys General, for the People as Amicus Curiae on behalf of Defendant and Respondent.
Law Office of James J. Moneer and James J. Moneer as Amici Curiae on behalf of Defendant and Respondent.
Levy, Ram, Olson & Rossi, Karl Olson; Karlene W. Goller, Los Angeles; Gray Cary Ware & Freidenrich, Edward P. Davis, Jr., San Jose, James Chadwick; Thomas W. Newton, Sacramento; Levine Sullivan & Koch, James Grossberg; Harold Fuson; Stephen J. Burns, Sacramento; Steinhart & Falconer, Roger R. Myers and Rachel E. Boehm for California Newspaper Publishers Association, Los Angeles Times, Copley Press, Inc., McClatchy Newspapers, San Jose Mercury, Freedom Communications, Inc., The Hearst Corporation, Media News Group and The Recorder as Amici Curiae on behalf of Defendant and Respondent.
R.S. Radford and Meriem L. Hubbard, Sacramento, for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.
Mark Goldowitz, Berkely, for California Anti SLAPP Project as Amicus Curiae on behalf of Defendant and Respondent.
Margaret C. Crosby for American Civil Liberties Union Foundation of Northern California, Inc., as Amicus Curiae on behalf of Defendant and Respondent.
Daniel Tokaji and Peter Eliasberg, Los Angeles, for ACLU Foundation of Southern California as Amicus Curiae on behalf of Defendant and Respondent.
Jordan Budd for American Civil Liberties Union Foundation of San Diego and Imperial Counties as Amicus Curiae on behalf of Defendant and Respondent.
Law Office of Fredric Evenson and Fredric Evenson for Ecological Rights Foundation as Amicus Curiae on behalf of Defendant and Respondent.
Law Office of Elizabeth Bader and Elizabeth E. Bader, San Francisco, for Kairos Project as Amicus Curiae on behalf of Defendant and Respondent.
James R. Wheaton, Oakland, and Iryna A. Kwasny for Environmental Law Foundation as Amicus Curiae on behalf of Defendant and Respondent.
*508 WERDEGAR, J.
Must a defendant, in order to obtain a dismissal of a strategic lawsuit against public participation (SLAPP)[1] under Code of Civil Procedure section 425.16 (section 425.16; the anti-SLAPP statute), demonstrate that the action was brought with the intent to chill the defendant's exercise of constitutional speech or petition rights? For the following reasons, we conclude not.[2]

*511 BACKGROUND

As the Court of Appeal explained, defendant Consumer Cause, Inc., served on Shell Pipe Line Corporation and Texaco, Inc., predecessors in interest to plaintiff Equilon Enterprises, LLC (Equilon), a notice of its intent to sue for alleged violations of Proposition 65. (See Health & Saf.Code, § 25249.7, subd. (d).) Consumer Cause's notice asserted that numerous Shell and Texaco gas stations in Southern California had, since 1994, been polluting groundwater by discharging benzene, lead, and toluene into the soil. Consumer Cause sent copies of its notice to the state Attorney General, the Los Angeles County District Attorney, and the Los Angeles City Attorney.
Equilon did not ask Consumer Cause to clarify its Proposition 65 notice. Instead, it filed this lawsuit for declaratory and injunctive relief, seeking a declaration that the notice failed to comply with the California Code of Regulations. Specifically, Equilon claimed the notice had not been served on the proper parties and that it failed to describe the alleged toxic discharges with sufficient particularity. Equilon also sought an injunction barring Consumer Cause from filing a Proposition 65 enforcement action.

Consumer Cause moved under the anti-SLAPP statute to strike Equilon's complaint. The trial court granted the motion and dismissed the action. The Court of Appeal affirmed. We granted Equilon's petition for review.
DISCUSSION
Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Id., subd. (b)(1).) "As used in this section, `act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law...." (Id., subd. (e).)
Courts of Appeal reviewing the application of section 425.16 have divided over the question whether a defendant who moves under the statute to strike a cause of action must, in order to prevail, demonstrate that the cause of action was brought with the intent of chilling the defendant's exercise of constitutional speech or petition rights. (Compare, e.g., Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 480, 102 Cal.Rptr.2d 205[no] with Foothills Townhome Assn. v. Christiansen (1998) 65 Cal.App.4th 688, 696, 76 Cal.Rptr.2d 516[yes].) As will appear, the defendant has no such burden.

A. Statute's Plain Language

Section 425.16 nowhere states that, in order to prevail on an anti-SLAPP motion, a defendant must demonstrate that the plaintiff brought the cause of action complained of with the intent of chilling the defendant's exercise of speech or petition rights. There simply is "nothing in the statute requiring the court to engage in an inquiry as to the plaintiffs subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable." *512 (Damon v. Ocean Hills Journalism Club, supra, 85 Cal.App.4th at p. 480, 102 Cal. Rptr.2d 205.) Section 425.16, rather, unambiguously makes subject to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as to which the plaintiff has not "established that there is a probability that [he or she] will prevail on the claim." (§ 425.16, subd. (b)(1); see Church of Scientology v. Wollersheim (1996) 42 Cal.App.4th 628, 648, 49 Cal.Rptr.2d 620 (Church of Scientology) [anti-SLAPP statute "clear and unambiguous" in applying to all claims "arising from" protected activity].)
Nor is there anything in section 425.16's operative sections implying or even suggesting an intent-to-chill proof requirement. "The legislative concern," rather, "is that the cause of action `aris[e] from' an act in furtherance of the constitutional right to petition or free speech." (Fox Searchlight Pictures, Inc. v. Paladino (2001) 89 Cal.App.4th 294, 307, 106 Cal. Rptr.2d 906.)
When on previous occasions we have construed the anti-SLAPP statute, we have done so strictly by its terms (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1131, 104 Cal.Rptr.2d 377, 17 P.3d 735 [calculation of anti-SLAPP attorney fees]; see also Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1113-1117, 81 Cal.Rptr.2d 471, 969 P.2d 564 (Briggs) [construction of § 425.16, subd. (e)]), and no reason appears why we should proceed otherwise in this case. Since section 425.16 neither states nor implies an intent-to-chill proof requirement, for us judicially to impose one, as Equilon urges, would violate the foremost rule of statutory construction. When interpreting statutes, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law.... `This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.'" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632-633, 59 Cal.Rptr.2d 671, 927 P.2d 1175.)

B. Legislative Intent

Citing the Legislature's finding, set out in the statute's preamble, that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and its declaration "that it is in the public interest to encourage continued participation in matters of public significance" (§ 425.16, subd. (a)), Equilon argues that the anti-SLAPP statute was intended by the Legislature to combat only actions brought with an intent to chill speech. For the following reasons we conclude that, to the contrary, judicial imposition on section 425.16 of an intent-to-chill proof requirement would contravene the legislative intent expressly stated in section 425.16, as well as that implied by the statute's legislative history.
The anti-SLAPP statute has since its enactment contained a preamble setting forth the Legislature's desire "to encourage continued participation in matters of public significance" (§ 425.16, subd. (a), as added by Stats.1992, ch. 726, § 2, p. 3523). In 1997, the Legislature amended section 425.16, effecting no substantive changes to the anti-SLAPP scheme, but adding to the preamble a requirement that the statute, to achieve its stated ends, "shall be construed broadly." (§ 425.16, *513 subd. (a), as amended by Stats.1997, ch. 271, § 1.)[3] Interpreting section 425.16, in accordance with its plain language, as encompassing unsubstantiated causes of action arising from protected speech or petitioning, without regard to the subjective intent of the plaintiff, both maximizes the statute's tendency "to encourage continued participation in matters of public significance" and conforms to the Legislature's express requirement of broad construction.
On the other hand, judicial imposition of an intent-to-chill proof requirement would undermine the Legislature's expressed aim that public participation "not be chilled" (§ 425.16, subd. (a)) by SLAPP's. Obviously, not only when a plaintiff intends to chill speech may the filing of a lawsuit have that result. "Intimidation will naturally exist anytime a community member is sued by an organization for millions of dollars even if it is probable that the suit will be dismissed" (Comment, Strategic Lawsuits Against Public Participation: An Analysis of the Solutions (1991) 27 Cal. Western L.Rev. 399, 405, fn. omitted). "Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights" (Church of Scientology, supra, 42 Cal. App.4th at p. 652, 49 Cal.Rptr.2d 620). "The Legislature recognized that `all kinds of claims could achieve the objective of a SLAPP suitJudge to interfere with and burden the defendant's exercise of his or her rights.'" (Beilenson v. Superior Court (1996) 44 Cal.App.4th 944, 949, 52 Cal. Rptr.2d 357.) For us to bar use of the anti-SLAPP device against nonmeritorious speech-burdening claims whenever a defendant cannot prove the plaintiffs improper intent would fly in the face of that legislative recognition.
We previously have stated that the legislative intent underlying section 425.16 must be "`gleaned from the statute as a whole'" (Briggs, supra, 19 Cal.4th at p. 1118, 81 Cal.Rptr.2d 471, 969 P.2d 564). "The fact the Legislature expressed a concern in the Statute's preamble with lawsuits brought `primarily' to chill First Amendment rights does not mean that a court may add this concept as a separate requirement in the operative sections of the statute." (Damon v. Ocean Hills Journalism Club, supra, 85 Cal.App.4th at p. 480, 102 Cal.Rptr.2d 205; see also Briggs, supra, at p. 1118, 81 Cal.Rptr.2d 471, 969 P.2d 564.) Any such requirement would be "too restrictive" (Church of Scientology, supra, 42 Cal.App.4th at p. 648, 49 Cal.Rptr.2d 620) in light of the Legislature's unqualified desire to "encourage continued participation in matters of public significance" (§ 425.16, subd. (a)).
Judicial imposition of an intent-to-chill proof requirement also would contravene legislative intent by modifying the detailed remedial scheme the Legislature laid out in the statute's operative sections. That scheme, as noted, makes subject to a *514 special motion to strike any cause of action against a person arising from constitutionally protected speech or petitioning activity, as defined in section 425.16, subdivision (e), "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim" (id., subd. (b)). Such terms are "inconsistent with a requirement the defendant prove the challenged lawsuit was brought to chill her First Amendment rights.... [T]he only thing the defendant needs to establish to invoke the [potential] protection of the SLAPP statute is that the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech. From that fact the court may [effectively] presume the purpose of the action was to chill the defendant's exercise of First Amendment rights. It is then up to the plaintiff to rebut the presumption by showing a reasonable probability of success on the merits." (Fox Searchlight Pictures, Inc. v. Paladino, supra, 89 Cal.App.4th at p. 307, 106 Cal.Rptr.2d 906.)
Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; "no resort to extrinsic aids is necessary or proper." (People v. Otto (1992) 2 Cal.4th 1088, 1108, 9 Cal.Rptr.2d 596, 831 P.2d 1178.) Nevertheless, we may observe that available legislative history buttresses our conclusion.
As we observed in Briggs: "Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect, inter aha, direct petitioning of the government and petition-related statements and writings.... The seminal academic research on which the original version of the statute was based used `an operational definition of SLAPP suits as implicating "behavior protected by the Petition Clause."'" (Briggs, supra, 19 Cal.4th at p. 1120, 81 Cal.Rptr.2d 471, 969 P.2d 564, quoting Canan & Pring, Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches (1988) 22 L. & Soc'y Rev. 385, 387.) As Professors Canan and Pring have explained, a neutral, easily applied definition for SLAPP's "avoids subjective judgments" about filers' or targets' motives, good faith, or intent. (Canan & Pring, SLAPPs: Getting Sued for Speaking Out (1996) p. 8.)
In short, the Legislature has in the anti-SLAPP statute expressly stated both its understanding of the problem to be addressed (see § 425.16, subd. (a)) and a detailed and specific remedy for addressing it (see id., subd. (b)). "We have no reason to suppose the Legislature failed to consider the need for reasonable limitations on the use of special motions to strike." (Briggs, supra, 19 Cal.4th at p. 1123, 81 Cal.Rptr.2d 471, 969 P.2d 564.)

C. Constitutional Considerations

Equilon argues that an intent-to-chill proof requirement is a constitutionally compelled element of the anti-SLAPP statutory scheme. Citing Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (1993) 508 U.S. 49, 60-62, 113 S.Ct. 1920, 123 L.Ed.2d 611 (Professional Real Estate Investors), Equilon asserts that the First Amendment generally bars liability for filing lawsuits, the only exception being for "sham" lawsuits. More particularly, Equilon contends that by contemplating the award of attorney fees without assessing intent to chill (§ 425.16, subd. (c)), the anti-SLAPP statute treads in a constitutional "minefield."
Equilon fails to demonstrate that its proffered construction of section 425.16 is constitutionally compelled. Hundreds of California statutes provide for an award of attorney fees to the prevailing party. (See *515 Pearl, Cal. Attorney Fee Awards (Cont. Ed.Bar 2d ed.2001) § 2.1, p. 12; see also id., ch. 17 [charting many such statutes].) Fee shifting simply requires the party that creates the costs to bear them. (Premier Elec. Const. Co. v. N.E.C.A., Inc. (7th Cir. 1987) 814 F.2d 358, 373.) It does not make a party "liable" for filing a lawsuit. This distinguishes Professional Real Estate Investors, supra, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611, Equilon's central authority, which concerns not fee shifting but the scope of antitrust liability for engaging in litigation. There, when movie studios challenging the rental of videodiscs to hotel guests brought a copyright infringement action against certain hotel operators, the operators filed counterclaims alleging the studios' action was intended illegally to restrain trade. The high court held that one who initiates litigation is immune from antitrust liability for doing so unless the litigation is a "sham." (Id. at pp. 60-61, 113 S.Ct. 1920.) The case did not involve a fee-shifting provision nor did the court anywhere suggest that its "sham" litigation rationale might apply in the fee-shifting context. Equilon cites no case in which a fee-shifting provision has been held unconstitutional under Professional Real Estate Investors or its rationale. (See generally Alyeska Pipeline Co. v. Wilderness Society (1975) 421 U.S. 240, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 [finding it "apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine"].)
In any event, Professional Real Estate Investorswherein the high court was at pains expressly "to reject a purely subjective definition of `sham'" (Professional Real Estate Investors, supra, 508 U.S. at p. 60, 113 S.Ct. 1920)does not support Equilon's contention that the anti-SLAPP statute must be engrafted with an intent-to-chill proof requirement in order to pass constitutional muster. (See generally Columbia v. Omni Outdoor Advertising, Inc. (1991) 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 [private party's selfish motives are irrelevant to doctrine precluding liability for petitioning government].) On the other hand, the United States Supreme Court has held that a defendant may obtain an attorney fee award where the plaintiffs suit is objectively "without foundation," noting that to permit such awards in cases of vexatious litigation "in no way implies that the plaintiffs subjective bad faith is a necessary prerequisite to a fee award against him." (Christiansburg Garment Co. v. EEOC (1978) 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 [title VII case].)
Contrary to Equilon's implication, section 425.16 does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning. It subjects to potential dismissal only those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits (§ 425.16, subd. (b)), a provision we have read as "requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim" (Rosenthal v. Great Western Fin, Securities Corp. (1996) 14 Cal.4th 394, 412, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (Rosenthal )). So construed, "section 425.16 provides an efficient means of dispatching, early on in the lawsuit, [and discouraging, insofar as fees may be shifted,] a plaintiffs meritless claims." (Paul for Council v. Hanyecz (2001) 85 Cal.App.4th 1356, 1364, 102 Cal.Rptr.2d 864.)
Nor do the anti-SLAPP statute's fee-shifting provisions inappropriately punish plaintiffs. Plaintiffs as well as defendants may recover fees: defendants, as *516 discussed, only when the plaintiff burdens free speech with an unsubstantiated claim (Rosenthal, supra, 14 Cal.4th at p. 412, 58 Cal.Rptr.2d 875, 926 P.2d 1061); plaintiffs whenever a defendant's motion to strike is "frivolous or is solely intended to cause unnecessary delay" (§ 425.16, subd. (c)). Equilon fails to persuade that such a fee-shifting provision overburdens those who exercise the First Amendment right of petition by filing lawsuits. "The right to petition is not absolute, providing little or no protection for baseless litigation" (Church of Scientology, supra, 42 Cal. App.4th at p. 648, fn. 4, 49 Cal.Rptr.2d 620).
Equilon also cites California Teachers Assn. v. State of California (1999) 20 Cal.4th 327, 84 Cal.Rptr.2d 425, 975 P.2d 622 (California Teachers) for the proposition that "a party cannot be held liable or punished for genuine petitioning," but for at least two reasons California Teachers is not apposite. First, in California Teachers we addressed the "unique and virtually unprecedented" requirement (id. at p. 333, 84 Cal.Rptr.2d 425, 975 P.2d 622) that a teacher who does not prevail on a reasonable and good faith challenge to a disciplinary suspension or dismissal pay to the state one-half the cost of the administrative law judge. Contrary to Equilon's implication, California Teachers nowhere discusses or calls into question fee-shifting provisions such as the one found in the anti-SLAPP statute.
Second, whereas the proponent of a speech-burdening claim may avoid an anti-SLAPP dismissal by submitting an affidavit substantiating the claim's legal sufficiency (§ 425.16, subd. (b)(2); Rosenthal, supra, 14 Cal.4th at p. 412, 58 Cal.Rptr.2d 875, 926 P.2d 1061), the disciplinary scheme at issue in California Teachers incorporated no such safety valve to diminish constitutional concerns. Section 425.16 "is one of several California statutes providing a procedure for exposing and dismissing certain causes of action lacking merit." (Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 37 Cal. App.4th 855, 866, 44 Cal.Rptr.2d 46.) "In varying language, all of these statutes literally require the trial court, at a preliminary stage of the litigation, to determine by examining affidavits the `substantial probability' of plaintiffs prevailing on a claim, whether evidence `substantiates' a standard of proof the plaintiff must meet, or whether plaintiff has `established ... a reasonable probability' of recovery" (ibid.). Equilon has failed to identify any support for the proposition that the constitutionality of such provisions depends upon their requiring proof of subjective intent.

D. Congruence with Privilege Law

"It is a fundamental rule of statutory construction that statutes should be construed to avoid anomalies." (State of South Dakota v. Brown (1978) 20 Cal.3d 765, 775, 144 Cal.Rptr. 758, 576 P.2d 473; see also People v. Ledesma (1997) 16 Cal.4th 90, 101, 65 Cal.Rptr.2d 610, 939 P.2d 1310.) In accordance with this principle, we previously have declined to construe the anti-SLAPP statute so as to produce "the anomalous result that much direct petition activity ... [,] while absolutely privileged under the litigation privilege ... and under the federal and state Constitutions, would not be entitled to the procedural protections of the anti-SLAPP law, even though section 425.16 expressly states the Legislature's intent thereby 'broadly' to protect the right of petition (§ 425.16, subd. (a))." (Briggs, supra, 19 Cal.4th at p. 1121, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
Similarly here. Were we to impose an intent-to-chill proof requirement, petitioning that is absolutely privileged under the *517 litigation privilege would be deprived of anti-SLAPP protection whenever a moving defendant could not prove that the plaintiff harbored an intent to chill that activity. Our construction avoids that anomalous result.

E. Public Policy

Considerations of public policy buttress the foregoing legal arguments against judicially imposing an intent-to-chill proof requirement on California's anti-SLAPP statute. A requirement that courts confronted with anti-SLAPP motions inquire into the plaintiffs subjective intent would commit scarce judicial resources to an inquiry inimical to the legislative purpose that unjustified SLAPP's be terminated at an early stage. "Imposing a requirement of establishing bad faith or ulterior motive adds a needless burden to SLAPP targets seeking relief, and destroys the relatively value-free nature of existing anti-SLAPP structures under which actions become suspect because of the circumstances of their arising and the relief sought, without need to litigate motive." (Braun, Increasing SLAPP Protection: Unburdening the Right of Petition in California (1999) 32 U.C. Davis L.Rev. 965, 969, fn. 9.) By requiring that a moving defendant demonstrate that the targeted cause of action is one arising from protected speech or petitioning (§ 425.16, subd. (b)), our anti-SLAPP statute utilizes a reasonable, objective test that lends itself to adjudication on pretrial motion. Such early resolution is consistent with the statutory design "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" (Tate, California's Anti-SLAPP Legislation: A Summary of and Commentary on Its Operation and Scope (2000) 33 Loyola L.A. L.Rev. 801), a purpose reflected in the statute's short time frame for anti-SLAPP filings and hearings (§ 425.16, subd. (f)) and provision for a stay of discovery (id., subd. (g)).
Contrary to Equilon's assertion, our conclusion will not allow the anti-SLAPP statute itself to become a weapon to chill the exercise of protected petitioning activity by people with legitimate grievances. The anti-SLAPP remedy is not available where a probability exists that the plaintiff will prevail on the merits. (§ 425.16, subd. (b).) "The Legislature, moreover, has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism." (Briggs, supra, 19 Cal.4th at pp. 1122-1123, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
Courts deciding anti-SLAPP motions, for example, are empowered to mitigate their impact by ordering, where appropriate, "that specified discovery be conducted notwithstanding" the motion's pendency. (§ 425.16, subd. (g).) And if "the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion" (id., subd. (c)). Most importantly, section 425.16 requires every defendant seeking its protection to demonstrate that the subject cause of action is in fact one "arising from" the defendant's protected speech or petitioning activity. (§ 425.16, subd. (b).)
As courts applying the anti-SLAPP statute have recognized, the arising from requirement is not always easily met. (See, e.g., ComputerXpress, Inc. v. Jackson (2001) 93 Cal.App.4th 993, 1002, 113 Cal. Rptr.2d 625; Church of Scientology, supra, 42 Cal.App.4th at p. 651, 49 Cal. Rptr.2d 620.) The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured *518 falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (See Bowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1417, 103 Cal.Rptr.2d 174.)
As discussed more fully in the companion case City of Cotati v. Cashman, supra, 29 Cal.4th 69, 124 Cal.Rptr.2d 519, 52 P.3d 694, the mere fact an action was filed after protected activity took place does not mean it arose from that activity. (ComputerXpress, Inc. v. Jackson, supra, 93 Cal.App.4th at p. 1002, 113 Cal.Rptr.2d 625.) Rather, "`the act underlying the plaintiffs cause' or `the act which forms the basis for the plaintiffs cause of action' must itself have been an act in furtherance of the right of petition or free speech." (Id. at p. 1003,113 Cal.Rptr.2d 625.)
In sum, as section 425.16 already contains express limitations on the availability and impact of anti-SLAPP motions, courts confronting such motions are well equipped to deny, mitigate, or even sanction them when appropriate. Contrary to Equilon's suggestion, therefore, it is not necessary that we impose an additional intent-to-chill limitation in order to avoid jeopardizing meritorious lawsuits. (See Briggs, supra, 19 Cal.4th at p. 1122, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
We are well advised not to upset the Legislature's carefully crafted scheme for disposing of SLAPP's quickly and at minimal expense to taxpayers and litigants. Our Legislature apparently adjudged the anti-SLAPP statute's two-prong test ("arising from" and minimal merit) and the statute's other express limitations to be adequate, finding it unnecessary to add an intent-to-chill or similar proof requirement such as Equilon proposes. We discern no grounds for second-guessing the Legislature's considered policy judgment.

F. Application

In light of the foregoing, we may summarize a court's task in ruling on an anti-SLAPP motion to strike as follows. Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant] right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."
When analyzed in this manner, the Court of Appeal's ruling is correct. The pleadings and the affidavits submitted by the parties establish that Equilon's action for declaratory and injunctive relief is one arising from Consumer Cause's activity in furtherance of its constitutional rights of speech or petitionviz., the filing of Proposition 65 intent-to-sue notices. (Health & Saf.Code, § 25249.7, subd. (d).) Since the trial court also found that Equilon had not established a probability of prevailing on its claim, the court properly granted the motion. (§ 425.16, subd. (b)(1); see also *519 Briggs, supra, 19 Cal.4th at p. 1115, fn. 6, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
While it may well be, as Equilon asserts, that it had pure intentions when suing Consumer Cause, such intentions are ultimately beside the point.[4] As demonstrated, Equilon's action for declaratory and injunctive relief expressly was based on Consumer Cause's activity in furtherance of its petition rights. The Court of Appeal correctly held that Consumer Cause, having satisfied its initial burden under the anti-SLAPP statute of demonstrating that Equilon's action was one arising from protected activity (§ 425.16, subd. (b)(1)), faced no additional requirement of proving Equilon's subjective intent.[5]

DISPOSITION
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
WE CONCUR: GEORGE, C.J., KENNARD, BAXTER, CHIN, BROWN and MORENO, JJ.
NOTES
[1] The acronym was coined by Penelope Canan and George W. Pring, professors at the University of Denver. (See generally Canan & Pring, Strategic Lawsuits Against Public Participation (1988) 35 Soc. Probs. 506.)
[2] This case has two companions. (See City of Cotati v. Cashman (2002) 29 Cal.4th 69, 124 Cal.Rptr.2d 519, 52 P.3d 694; Navellier v. Sletten (2002) 29 Cal.4th 82, 124 Cal.Rptr.2d 530, 52 P.3d 703.)
[3] "The Legislature's 1997 amendment of the statute to mandate that it be broadly construed apparently was prompted by judicial decisions . . . that had narrowly construed it to include an overall `public issue' limitation." (Briggs, supra, 19 Cal.4th at p. 1120, 81 Cal.Rptr.2d 471, 969 P.2d 564; see also id. at p. 1123, 81 Cal.Rptr.2d 471, 969 P.2d 564 [holding there is no such limitation].) Section 425.16, subdivision (a), now provides, in its entirety: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."
[4] Equilon purports to have sought declaratory relief solely in order to "get clarification of what it had to do" to avoid Proposition 65 liability after receiving Consumer Cause's notices. Equilon neglects to mention, when arguing in this vein, that it also sought injunctive relief that expressly would restrict Consumer Cause's exercise of petition rights. We need not in this case, therefore, decide whether or when a pure declaratory relief action seeking mere clarification of past speech or petitioning, but alleging no "liability or defense" (§ 425.16, subd. (b)(2)) or remedy "against a person" (id., subd. (b)(1)) that significantly would burden future exercise of such rights, might evade anti-SLAPP scrutiny. Such questions in any event lie beyond the scope of our review.
[5] To the extent they hold to the contrary, Paul for Council v. Hanyecz, supra, 85 Cal.App.4th at p. 1364, 102 Cal.Rptr.2d 864, Foothills Townhome Assn. v. Christiansen, supra, 65 Cal.App.4th at p. 696, 76 Cal.Rptr.2d 516, Linsco/Private Ledger, Inc. v. Investors Arbitration Services, Inc. (1996) 50 Cal.App.4th 1633, 1639, 58 Cal.Rptr.2d 613, Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers (1996) 49 Cal.App.4th 1591, 1600, 57 Cal.Rptr.2d 491, Church of Scientology v. Wollersheim, supra, 42 Cal.App.4th at pp. 648-649, 49 Cal.Rptr.2d 620, and Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 819, 33 Cal.Rptr.2d 446, are disapproved.