[No. B194487. Second Dist., Div. Five. Aug. 13, 2007.]

SOPHIA METSOS ROHDE, Plaintiff and Respondent, v.
MICHAEL WOLF, Defendant and Appellant.

**COUNSEL**

Wolf, Rifkin, Shapiro & Schulman, Roy G. Rifkin, Ryan P. Eskin and Stephen M. Levine for Defendant and Appellant.

Catanese & Wells, T. Randolph Catanese and Douglas R. Hume for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

There were disputes, including threats of litigation, between a brother and sister concerning the distribution of their deceased father's assets. During the period of the disputes, the attorney for the brother became dissatisfied when the proposed listing agent for one of the father's real property assets,

allegedly at the sister's direction, failed to send the attorney a listing agreement for the property and a proposal from a potential buyer. The attorney left voice mail messages that accused the listing agent of conspiring with the sister to defraud the brother and that threatened to take "appropriate action." The sister sued the brother's attorney for defamation based on those messages. The attorney filed a motion to strike the sister's complaint under the anti-SLAPP (strategic lawsuit against public participation) statute—Code of Civil Procedure section 425.16 (section 425.16). The trial court denied the motion, and the attorney appeals. In reversing, we hold that the messages, under these circumstances, are covered by the anti-SLAPP statute and the litigation privilege in Civil Code section 47, subdivision (b) (section 47), and that the lawyer's anti-SLAPP motion should have been granted.

## BACKGROUND

Peter Metsos died on March 29, 2004. He left a will, the Metsos Family Trust, and the Peter Metsos Trust. George Metsos (Metsos), Peter Metsos's son, was appointed executor of the Peter Metsos Trust. The Metsos Family Trust included a number of corporations that managed and operated individual restaurants.[1] The Metsos Family Trust also owned real estate related to at least some of these restaurants. Among the corporations in the Metsos Family Trust was P.S.G., Inc., which managed and operated the Lamplighter No. 3 restaurant.

From at least January 2006, Metsos and his sister, plaintiff and respondent Sophia Metsos Rohde (plaintiff), had a dispute concerning the distribution of their father's assets. Defendant and appellant Michael Wolf (defendant), an attorney, and his law firm, Wolf, Rifkin, Shapiro & Schulman, LLP, represented Metsos in that dispute.

On February 10, 2006, defendant wrote a letter to T. Randolph Catanese, plaintiff's attorney, addressing a number of issues in the dispute. By letter dated that same day, Catanese responded, "Generally, when I receive letters of this type I do not respond with a letter, but rather with a lawsuit. It is readily apparent that you and your client have no desire to resolve the issues between our respective clients absent court intervention. Accordingly, the intended purpose of this letter is to apprise you and your client of what will be contained in a lawsuit, in part, when one is filed."

---

[1] The record is unclear as to which entity the assets belong. Plaintiff refers to Peter Metsos's estate, the Metsos Family Trust, and the Peter Metsos Trust collectively as the "Metsos Family Trust." We do also. In referring to the distribution of Peter Metsos's assets, we do not distinguish between assets passing by way of a will or through trusts.

Thereafter, on April 17, 2006, Catanese, plaintiff, plaintiff's husband, and defendant met and agreed that certain real property located in Chatsworth (the real estate related to the Lamplighter No. 3 restaurant) would be sold and the net proceeds divided equally between plaintiff and Metsos. Steve Weiss of NAI Capital was to be the listing agent and to prepare a listing agreement. Each of the sides was to keep the other informed of any developments concerning the listing and sale of the property. Nothing was to proceed with respect to the sale of the property without the mutual consent of Metsos and plaintiff.

On April 25, 2006, defendant spoke with Weiss and advised him that he was to be included in all communications regarding the listing and sale of the property. Weiss informed defendant that he would be putting together a proposal for plaintiff and Metsos that week. Defendant asked Weiss to prepare a listing agreement for "our review" (presumably for the review by defendant and Catanese).

On May 3, 2006, defendant had not heard from Weiss. He called Weiss and, apparently, left a message. In a responding voice mail message, Weiss "indicated" that he had prepared a listing agreement and had sent the listing agreement to plaintiff along with a proposal from a potential buyer for the property. Weiss stated that plaintiff had "specifically instructed" him not to send the listing agreement and proposal to defendant.

Later that day, defendant attempted, unsuccessfully, to reach Weiss. Defendant left a voice mail message for Weiss demanding the listing agreement and proposal, expressing his dissatisfaction with not having been sent these documents, and stating, "I believe you are obviously engaged in a conspiracy to defraud my client with Sophia Rohde and I plan on taking appropriate action." Shortly thereafter, defendant left Weiss a second voice mail message stating, "Since you are obviously avoiding my calls, I can only assume that you are engaged in some kind of conspiracy with Sophia Rohde to deprive George Metsos of his interest in his property." In his declaration in support of his anti-SLAPP motion, defendant states, "I know that, had my client and I continued to be excluded from communications concerning the listing and sale of the Chatsworth Property, an action would have been filed to protect my client's interests."

On May 9, 2006, plaintiff and her husband filed an action alleging various causes of action against Metsos and a corporation of which he is allegedly the controlling shareholder and sole officer and director. Plaintiff and her husband

alleged that through defendant's statements, Metsos attempted to interfere with the negotiations for the sale of the real estate in question.

On May 26, 2006, plaintiff filed a separate action—this one against defendant—alleging that defendant's voice mail messages to Weiss defamed plaintiff and constituted slander per se. According to plaintiff's complaint, defendant stated "words actually or to the effect 'Sophia Rohde is engaged in a conspiracy with you to defraud my client George Metsos of his real estate or personal property.' "

On July 31, 2006, defendant filed his anti-SLAPP motion to strike plaintiff's complaint in her slander per se action. The trial court denied the motion. Defendant appealed.

## DISCUSSION

Defendant contends that the trial court erred in denying his section 425.16 anti-SLAPP motion to strike plaintiff's complaint in her slander per se action. We agree.

### A. *The Anti-SLAPP Statute and the Standard of Review*

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)

■ In considering the application of the anti-SLAPP statute, courts engage in a two-step process. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 [54 Cal.Rptr.3d 775, 151 P.3d 1185], ellipsis in original, quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) " ' "The defendant has the burden

on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]" [Citation.]' [Citations.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].) Our review of the denial of a motion to strike under the anti-SLAPP statute is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606] (*Flatley*).)

## B.   *Protected Activity*

Section 425.16 defines an "act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue," covered by the anti-SLAPP statute and subject to an anti-SLAPP motion, as including statements or writings made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (b)(1), (e).) Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*); *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5 [39 Cal.Rptr.3d 547] (*Healy*).)

Section 425.16 is "construed broadly, to protect the right of litigants to ' "the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions." ' (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; see § 425.16, subd. (a); *Briggs, supra,* 19 Cal.4th at p. 1119.)" (*Healy, supra,* 137 Cal.App.4th at p. 5; see *Flatley, supra,* 39 Cal.4th at pp. 321–322.) " '[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs, supra,* 19 Cal.4th at p. 1115; see *Flatley, supra,* 39 Cal.4th at p. 322, fn. 11 [rejecting plaintiff's contention that prelitigation communications do not fall within the ambit of § 425.16 " ' "communications preparatory or in anticipation of bringing an action or other official proceeding" ' are protected by section 425.16"], quoting *Briggs, supra,* 19 Cal.4th at p. 1115.)

One court has noted that the privilege "arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 39 [61 Cal.Rptr.2d 518], italics omitted.) A later case noted that *Edwards* "does not hold or suggest that a complaint must be drafted before the privilege will apply." (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 268 [68 Cal.Rptr.2d 305].) "[T]he question in *Edwards* was not 'imminentness,' but remoteness . . . [;] 'imminency' is not an issue in the case of a classic demand letter . . . [;] the litigation privilege is not conditioned upon an 'imminency' requirement separate from the requirement that prelitigation statements be made in serious and good faith consideration of litigation." (*Ibid.*) Recently, the Supreme Court stated that "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. [Citations.]" (*Action Apartment Assocation, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [163 P.3d 89].)

Defendant and his law firm represented Metsos in an ongoing dispute with plaintiff concerning the distribution of their father's assets. During that representation, plaintiff's attorney threatened to file a lawsuit on her behalf against her brother. In a detailed letter, plaintiff's attorney "apprised" defendant of what would be contained in that lawsuit when filed. In connection with the dispute, the parties agreed to sell one property. During the attempted sale and distribution of that property, plaintiff allegedly instructed Weiss to exclude Metsos's attorney and defendant from the distribution of documents relevant to the sale of that asset. In response to his exclusion, defendant left the voice mail messages to Weiss in which he accused Weiss and plaintiff of conspiring to defraud Metsos of Metsos's interest in the asset and stated his intention to take "appropriate action." In his declaration in support of his anti-SLAPP motion, defendant states that if he and Metsos continued to be excluded from receiving such documents, he would have filed an action to protect Metsos's interests. Shortly after defendant's voice mail messages to Weiss, plaintiff filed her action against Metsos concerning the distribution of assets.

Defendant's voice mail messages to Weiss were statements made in connection with an asset that was the subject of the dispute in which *both* plaintiff and defendant threatened litigation. In short, the spectre of litigation loomed over all communications between the parties at that time. Thus, the messages concerning the subject of the dispute and threatening appropriate action in that context had to be in anticipation of litigation "contemplated in good faith and under serious consideration." (*Action Apartment Association,*

*Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1251.) Accordingly, defendant's communications in issue satisfied his burden under the first step in applying the anti-SLAPP statute by establishing that his conduct was protected activity under that statute.

### C. *Probability of Prevailing*

" 'In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' " [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]' ([*Wilson v. Parker, Covert & Chidester* (2002)] 28 Cal.4th [811,] 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], original italics.) (See also, e.g., *Equilon, supra,* 29 Cal.4th 53, 63 [section 425.16 'subjects to potential dismissal . . . those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits [citation], a provision we have read as "requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim" ']; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958] [under section 425.16 'the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation'].)" (*Taus v. Loftus, supra,* 40 Cal.4th at pp. 713–714.)

The litigation privilege in section 47 applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) Prelitigation statements are protected under section 47 when they are made in connection with a proposed litigation that is "contemplated in good faith and under serious consideration." (*Action Apartment Association, Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1251.)

As with section 425.16, courts broadly construe section 47 to protect a litigant's right to access to the courts without fearing subsequent harassing derivative tort actions. (*Healy, supra,* 137 Cal.App.4th at p. 5; see *Flatley,*

*supra*, 39 Cal.4th at pp. 321–322.) The litigation privilege under section 47 is " 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.]" (*Flatley, supra*, 39 Cal.4th p. 322.) As noted above, "[t]he privilege has also been held to apply to 'statements made prior to the filing of a lawsuit.' [Citation.]" (*Ibid.*; see *Briggs, supra*, 19 Cal.4th at p. 1115 [" 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . .' "].)

■ The privilege in section 47 is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing. (See, e.g., *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926–927 [120 Cal.Rptr.2d 576] [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783–785 [54 Cal.Rptr.2d 830] [the defendant's prelitigation communication privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)" (*Flatley, supra*, 39 Cal.4th at p. 323.)[2]

■ As discussed above, whether defendant's voice mail messages to Weiss are privileged under section 47 appears to be determined under the same test applicable to whether the statements are protected activity under section 425.16. (*Briggs, supra*, 19 Cal.4th at p. 1115.) Because we have held that the statements were a protected activity under the anti-SLAPP statute, they are also privileged under section 47 as statements made in anticipation of litigation "contemplated in good faith and under serious consideration." (*Action Apartments Association, Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1251.) Thus, defendant's voice mail messages to Weiss are absolutely privileged under section 47. That privilege provides a substantive defense to plaintiff's slander per se action. (*Flatley, supra*, 39 Cal.4th at p. 323.) Plaintiff cannot meet her burden under the second step in applying the anti-SLAPP statute of demonstrating a probability of prevailing—i.e., a " ' "prima facie showing" ' "—in her slander per se action. (*Taus v. Loftus, supra*, 40 Cal.4th at pp. 713–714; see *Flatley, supra*, 39 Cal.4th at p. 323.) Accordingly, the trial court erred in denying defendant's anti-SLAPP motion.

---

[2] "Notwithstanding [the] relationship between the litigation privilege and the anti-SLAPP statute . . . the two statutes are not substantively the same." (*Flatley, supra*, 39 Cal.4th at p. 323.)

## DISPOSITION

The order is reversed, and the matter is remanded to the trial court to ascertain any award of attorney fees. Costs on appeal are awarded to defendant.

Armstrong, Acting P. J., and Kriegler, J., concurred.