Filed 4/19/13  Gotti v. Pinnock CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NONI GOTTI, | D061802 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00104874-CU-FR-CTL) |
| THEODORE A. PINNOCK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Defendant Theodore A. Pinnock, a now-disbarred attorney residing in the Philippines, filed over 200 cases on behalf of plaintiff Noni Gotti against businesses for alleged violations of the Americans with Disabilities Act (ADA), allegedly without her knowledge and consent and for disabilities from which she did not suffer.

Gotti thereafter filed this action against Pinnock, his law firm, and his partner, David C. Wakefield.[1] In her second amended complaint—the applicable complaint in this action—(hereafter the complaint), she asserted claims for (1) return of case files, (2) accounting, (3) unprivileged use of identity, (4) breach of fiduciary duty, (5) negligence, (6) professional negligence, (7) breach of contract, (8) money had and received, (9) imposition of constructive trust, (10) forgery, and (11) constructive fraud. In her complaint she also described several other individuals who Pinnock had used to file similar unmeritorious claims to show a pattern of activity that would support an award of punitive damages.

Pinnock, acting in propria persona, responded to the complaint by filing an anti-SLAPP special motion to strike under Code of Civil Procedure (all further undesignated statutory references are to the Code of Civil Procedure) section 425.16. In that motion Pinnock asserted that (1) the complaint was based upon his protected activity of filing litigation in state and federal courts to enforce the rights of disabled persons under the ADA, and (2) the references in the complaint to other litigation filed by Pinnock on behalf of other plaintiffs were improper.

The court denied the motion, finding (1) the complaint was not an attempt to limit Pinnock's free speech rights but rather sought restitution for his alleged wrongful actions; (2) the action was one excluded from the litigation privilege because it was a case where a former client was suing her former attorney for breach of fiduciary duty; and (3) the

---

[1] Pinnock's law firm and Wakefield are not parties to this appeal, so we shall refer only to defendant Pinnock in this opinion.

references to other individuals were not improper because she was not seeking to collect damages on their behalf.

On this appeal, Pinnock, again acting in propria persona, concedes that the court did not err in finding that the anti-SLAPP motion was properly denied as to Gotti's claims for alleged malpractice/malfeasance by Pinnock. However, he contends that the reference to other persons on whose behalf he allegedly filed unmeritorious ADA compliance claims should have been stricken. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

In the complaint Gotti asserted that in 2008 and 2009 Pinnock filed over 200 lawsuits using her name, "many if not all of which contained false claims . . . ." By way of example, she cited the fact that some of the lawsuits sought damages under the ADA for discrimination in failing to provide Braille at facilities when "she does not need Braille, cannot read Braille and has eyesight good enough to drive." Other complaints sought damages "for the alleged failure of the defendants to provide wheelchair accessibility, but [Gotti] does not use a wheelchair, has never required one, and regularly walks without one." Other lawsuits filed by Pinnock in Gotti's name "complained of conditions like doorhandles which were not lever-style, unsecured floormats, high thresholds, etc., but [she] has all these conditions at her residence . . . ."

Gotti further alleged that she never authorized Pinnock to make these claims. She also alleged that her signature had been falsified on a number of documents in these cases. She alleged that she has requested a copy of the files from these cases and a full

3

accounting, but "many critical documents known to exist have still not been received, nor has a full and complete accounting of the proceeds [Pinnock] received in each of these cases been provided."

Finally, in support of her claim for punitive damages, Gotti identified four individuals on whose behalf Pinnock allegedly filed similar claims. These allegations were pleaded to show a pattern and practice by Pinnock that would demonstrate punitive damages were justified in this case.

B. *The Anti-SLAPP Motion To Strike*

In his anti-SLAPP motion to strike, Pinnock argued that Gotti's claims arose out of his exercise of protected speech and right to petition in the courts to redress violations of civil rights arising out of past and/or current ligation to enforce the ADA. He further asserted that claims based upon the four other individuals identified in the complaint similarly were based upon his protected activity.

Pinnock also asserted that Gotti could not meet her burden of showing she would prevail on her claims because they were based upon privileged communications.

C. *The Court's Ruling*

The court denied Pinnock's motion. In doing so, the court made the following findings: "The gravamen of [Gotti's complaint] is not an attempt to limit [Pinnock's] free speech rights. The [complaint's] eleven causes of action each attempt to provide [Gotti] with restitution for [Pinnock's] alleged wrongful actions. Additionally the fact that this is an action where a client is suing her former attorney for, among other things, a breach of fiduciary duty shows that this is the exact type of claim that prior case law has held

4

excluded from the litigation privilege such that [Pinnock's] speech is not a protected activity under [] section 425.16. [Citation.] [Pinnock's] assertion that the targeted speech is protected under the litigation privilege because [Gotti] is alleged to be to be suing for harm that resulted to [Pinnock's] other clients is not supported by a close reading of the [complaint]. While [Gotti] does outline, on pages 18-23 of the [complaint], other alleged instances of [Pinnock's] deceit[,] [Gotti] does not seek to collect damages based on those other allegedly aggrieved individuals. [Citation.] This is thus an action between a client and her former attorney such that the litigation privilege does not apply."

DISCUSSION

I. *APPLICABLE LEGAL PRINCIPLES*

A special motion to strike under section 425.16 allows a defendant to gain early dismissal of a lawsuit that qualifies as a SLAPP. (§ 425.16, subd. (a).) In ruling on an anti-SLAPP motion, the trial court must first decide whether the moving defendant has made a prima facie showing that the plaintiff's suit is subject to section 425.16, i.e., that the challenged claims arise from an act or acts in furtherance of his or her right of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) These acts include written or oral statements made before a judicial proceeding or in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (e).)

To determine whether a defendant has met its initial burden, we consider the pleadings and any supporting and opposing affidavits stating facts upon which the liability is based. (§ 425.16, subd. (b)(2); *City of Cotati v. Cashman* (2002) 29 Cal.4th

5

69, 79.) "[T]he 'arising from' requirement is not always easily met" and "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*Equilon*, *supra*, 29 Cal.4th at p. 66.) A claim "arises from" an act when the act "'"forms the basis for the plaintiff's cause of action."'" (*Ibid*.) If the defendant establishes the anti-SLAPP statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) We review de novo the trial court's rulings on an anti-SLAPP motion. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.)

## II.  *ANALYSIS*

As noted, *ante*, Gotti referenced four other plaintiffs on whose behalf Pinnock allegedly brought unmeritorious ADA compliance actions to support her claim for punitive damages. These allegations were proper to demonstrate the reprehensibility of Pinnock's conduct in support of Gotti's claim for punitive damages.

In *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, the United States Supreme Court held that "'the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" (*Id.* at p. 419.) Moreover, in *Campbell,* the high court noted that its "'holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.'" (*Id.* at p. 423.) Our Supreme Court has similarly held that conduct is more reprehensible where it is part of a repeated practice rather than an isolated incident. (*Johnson v. Ford Motor Co.* (2005) 35 Cal.4th 1191, 1196.)

6

Accordingly, Gotti's allegations of similar actions by Pinnock in other cases were proper to show the reprehensibility of Pinnock's conduct to support her claim for punitive damages and were thus not aimed at "protected activity" that would subject them to being stricken under the anti-SLAPP statute.

## DISPOSITION

The order denying Pinnock's anti-SLAPP motion to strike is affirmed.  Gotti shall recover her costs on appeal.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

7