Filed 10/21/13  Lewis v. Wren CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| ROBERT R. LEWIS et al., | |
| Plaintiffs and Appellants, | E054520 |
| v. | (Super.Ct.No. CIVRS1103414) |
| CHRIS WREN et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  David A. Williams, Judge.  Affirmed.

The La Cues Law Group and Jerry La Cues for Plaintiffs and Appellants.

Musick, Peeler & Garrett and Robert G. Warshaw for Defendants and Respondents Stocker and Lancaster, LLP and Jay F. Stocker.

Stocker & Lancaster and Jay F. Stocker for Defendants and Respondents Chris Wren and Nancy Wren.

## I.  INTRODUCTION

Plaintiffs Robert R. Lewis and Linda Lewis appeal from the dismissal of their action against defendants and respondents Chris Wren, Nancy Wren, Stocker & Lancaster, LLP, and Jay F. Stocker for negligent infliction of emotional distress and malicious prosecution following the trial court's granting of defendants' special motion to strike (anti-SLAPP[1] motion) under Code of Civil Procedure[2] section 425.16.  The Lewises contend they made a prima facie showing of facts to sustain a favorable judgment, and the trial court therefore erred in granting the special motion to strike.  The Lewises also contend the trial court erred in ruling on the admissibility of evidence.  We affirm.

## II.  FACTS AND PROCEDURAL BACKGROUND

### A.  Background

On March 7, 2002, the Wrens and the Lewises entered into an agreement by which the Wrens agreed to purchase residential property (the property) from the Lewises for $350,000.  Escrow on the sale of the property closed on June 4, 2002.

Before June 2000, the Lewises had been involved in a dispute with Cox PCS Assets, LLC, (Cox) and Sprint (collectively referred to herein as Sprint)[3] regarding the

---

[1] The acronym SLAPP stands for strategic lawsuit against public participation. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[2] All further statutory references are to the Code of Civil Procedure.

[3] At some point, Cox assigned its rights to or changed its name to Sprint.

2

property. Sprint had apparently been entering the property to access a cellular telephone tower or equipment on adjacent property. In June 2000, the Lewises filed a verified complaint against Sprint and others. The Lewises alleged Sprint had trespassed on the property, including excavating, constructing a utilities trench over 300 feet of the property, using the property for ingress and egress, and allowing other parties to use the property for ingress and egress. The complaint sought damages and an injunction against Sprint's use of the property and requiring Sprint to remove the utilities trench.

Meanwhile, during negotiations for the Wrens' purchase of the property, the Lewises provided a multipage disclosure statement that the Wrens initialed in March 2002.[4] The preliminary title report the Wrens obtained disclosed certain public utility easements but did not disclose an easement in favor of Sprint or the litigation between the Lewises and Sprint. The Lewises did not update the disclosure statement at any time before the close of escrow.

The Lewises continued negotiating with Sprint and other defendants in the Lewises' action for trespass and eventually entered into a settlement agreement under which Sprint was granted an easement over the property, and Sprint agreed to pay the Lewises an initial sum of $28,000 and monthly payments thereafter of $800. The agreement provided: "The compensation for the use of the easements granted herein is set forth in a separate agreement. The compensation shall be paid to Grantor [the

---

[4] The Lewises assert it was undisputed that the statement disclosed the easement; however, the relevant handwritten portions of the document the Lewises have provided to support that assertion are illegible.

Lewises] notwithstanding the Grantor transferring ownership of the subject property to a third party. The right to compensation is the personal right of the Grantor and shall not inure to the benefit of any future owner, transferee or encumbrancer." The Lewises executed the settlement agreement on June 3, 2002. The same day, which was one day before the close of escrow on the sale of the property to the Wrens, counsel for Sprint sent the escrow company a letter stating: "By means of this letter, please be advised and instructed that the Mutual Settlement Agreement and Release of Claims documents currently in your possession (two Agreements originally executed by Sprint) are not to be reviewed by you or by members of Somerset Escrow, nor photocopied, as they are for the eyes of Attorney Jerry LaCues and/or his clients, Mr. and Mrs. Lewis only, and are to be given directly to Mr. or Mrs. Lewis or Mr. LaCues at this time. They are confidential in nature and were provided in the same envelope to you on Friday, May 31, 2002, for the convenience of Mr. and Mrs. Lewis only . . . ."

Escrow for the sale of the property closed on June 4, 2002. The grant of easement to Sprint was recorded seconds before the grant deed for the sale of the property; the recording time for both documents was shown as 3:00 p.m., and the recording number for the grant of easement is one digit before that for the grant deed.

### B. Underlying Action

On March 25, 2009, the Wrens filed a complaint against the Lewises, Sprint, and others for fraud and deceit, breach of fiduciary duties, continuing trespass and nuisance, quiet title, cancellation of written instrument, constructive trust, declaratory relief, and

4

accounting (the underlying action). Stocker & Lancaster, LLP and Jay F. Stocker (collectively referred to herein as Stocker) represented the Wrens in the underlying action. The gravamen of the complaint (and the later-filed first amended complaint) in the underlying action was that the Lewises had improperly concealed (1) their actions, (2) the agreement granting Sprint an easement over the property, and (3) Sprint's continuing payments to the Lewises for the easement. Thereafter, the Wrens entered into settlement agreements with all the defendants[5] in the underlying action except the Lewises. The Wrens' settlement with Sprint provided for an unrecorded easement in favor of Sprint and for Sprint to provide the Wrens with indemnity protection.

Stocker filed a request for dismissal of the underlying complaint on September 17, 2010, as to the Lewises. The Lewises thereafter filed a motion for attorney fees on the ground they were the prevailing parties in the underlying action. The trial court denied the motion after finding there had been no prevailing party. The Lewises filed a request for reconsideration of that ruling, which the trial court denied.

On April 6, 2011, the Lewises filed a complaint for malicious prosecution against defendants. On June 13, 2011, the Wrens and Stocker filed special motions to strike.

The trial court found that the Lewises had met their initial burden of showing that their action arose from their right to petition or to free speech under section 425.16. The court further found, however, that the Lewises had failed to meet their burden of establishing a reasonable probability they would prevail on the merits. Specifically, the

---

[5] Those defendants included Sprint and the real estate agents and brokers who had represented the Lewises in connection with the 2002 sale of the property.

5

court found they had failed to establish a reasonable probability they could show that the underlying action was terminated in their favor as to the Wrens, that the underlying action was initiated or maintained by Stocker without probable cause or malice, or that Stocker was liable for the claims of negligent infliction of emotional distress. The court therefore granted the special motions to strike for Stocker and for the Wrens.

## III.  DISCUSSION

### A.  Overview of Anti-SLAPP Motions

The anti-SLAPP statute authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional rights of free speech or petition for redress of grievances. (§ 425.16; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312 (*Flatley*).) The purpose of the statute is to prevent the chilling of the valid exercise of these rights through "abuse of the judicial process" and, to this end, is to "be construed broadly." (§ 425.16, subd. (a); *Flatley, supra,* at pp. 312-313.)

The anti-SLAPP statute establishes a two-step procedure under which the trial court evaluates the merits of a plaintiff's cause of action at an early stage of the litigation. (*Flatley, supra,* 39 Cal.4th at p. 312.) First, the defendant must show that the cause of action arose from protected activity, i.e., activity in furtherance of the defendant's constitutional rights of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Second, if the trial court determines the defendant has made such a showing, the burden shifts to the plaintiff to

6

demonstrate a reasonable probability of prevailing on the merits of his or her cause of action. (§ 425.16, subd. (b)(1); *Equilon, supra*, at p. 67.)

We review de novo the trial court's order granting or denying a motion to strike under section 425.16. (*Flatley*, *supra*, 39 Cal.4th at p. 325.)

## B. Act in Furtherance of Rights of Petition or Free Speech

The trial court found that the Lewises had met their initial burden of showing that their action arose from their rights to petition or to free speech under section 425.16. That finding is not challenged on appeal.

## C. Probability of Prevailing on Merits

The trial court found that the Lewises had not met their burden of showing a reasonable probability of prevailing on the merits. To demonstrate a reasonable probability of prevailing on the merits at trial (§ 425.16, subd. (b)(1)), "the plaintiff must show both that the claim is legally sufficient and there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108-109.) On appeal, "'[w]e consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'" [Citation.] If the plaintiff 'can show a probability of prevailing on *any part of its claim,* the cause of action is not

7

meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

### D. Sufficiency of Prima Facie Showing

The Lewises contend they made a prima facie showing of facts to sustain a favorable judgment, and the trial court therefore erred in granting the special motion to strike. In their complaint, the Lewises alleged causes of action for malicious prosecution and negligent infliction of emotional distress. On appeal, they do not raise any argument to challenge the trial court's ruling as to the cause of action for negligent infliction of emotional distress, and we therefore do not address that cause of action herein.

### E. Cause of Action for Malicious Prosecution

To establish a cause of action for malicious prosecution, a plaintiff must prove that: (1) the prior action was commenced by or at the direction of the defendant and was terminated in the plaintiff's favor; (2) the prior action was initiated or continued without probable cause; (3) the prior action was initiated with malice; and (4) the plaintiff suffered damage or injury as a result. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872.) We will focus our discussion on the elements of probable cause and malice.

The Lewises argue, among other things, that the underlying action was initiated and continued without probable cause. We will focus our analysis on that element.

8

The Lewises assert the underlying action lacked probable cause because it was "<u>undisputed</u> that the [Wrens] signed a disclosure statement during the course of escrow for the sale of the Property wherein the Easement was disclosed" and other evidence and documents substantiated the disclosure of the easement.  We disagree that the evidence of disclosure was undisputed.  First, the handwritten portions of the disclosure document to which the Lewises cite are largely illegible.  They have thus failed to provide an adequate record on appeal to support their assertion.  (See, e.g., *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 849.)  Second, the Lewises define the easement as "a settlement agreement whereby [the Lewises] granted [Sprint] an easement for access and utilities . . . ."  That settlement agreement was executed on June 3, 2002, the day before escrow closed, and was recorded on June 4, 2002, seconds before the recordation of the grant deed for the sale of the property.  The Wrens thus could not have been provided a conformed copy of the easement before escrow closed.  Moreover, the purported disclosure statement was dated on March 6, 2002, almost three months before the settlement agreement that created the easement, and it was logically impossible for the disclosure statement to disclose an easement that did not yet exist.

The Lewises further assert that a 2002 letter written to the Wrens' real estate agent reflected conversations between the Lewises' and Wrens' agents regarding the easement, and that letter proves that the easement was disclosed.  Again, the evidence on the issue was by no means undisputed.  First, the escrow company was expressly instructed not to review or copy the documents connected to the easement or to disclose them to anyone

9

but the Lewises' attorney. Second, both Wrens executed declarations stating that no easement documents had been delivered to them through escrow. They declared they were never informed of the easement or of the continued payments to the Lewises. The Wrens declared they discovered the easement after March 2006 when someone came to the property with the intent of using the easement and showed them the document granting the easement. They declared that their real estate agent never disclosed a Sprint easement or any documents related to such an easement. Third, the Wrens' real estate agent left them a recorded telephone message on September 23, 2008, in which he stated: "But as I kind of put the docs together, I think the Lewises are being so tight-lipped right now because it's a legal document. It [the Sprint easement] was recorded before we closed, and the last one that was signed on the 3rd, we closed on the 4th. [¶] . . . [¶] So whatever money he's made from them after the 3rd, actually is to go to you. I think that's why he's being so tight-lipped, because technically you can sue him for that money that he received that was supposed to go to you. [¶] . . . [¶] So I think he knows that he got caught, and he owes you money. So, not that you'll ever collect it, but at least you kind of know what he did, because its [*sic*] sounds like he did something pretty underhanded." (Underlining omitted.)

In *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th 728, the court upheld the trial court's grant of the defendant's anti-SLAPP motion to strike the plaintiff's action for malicious prosecution. The court held that the plaintiff had failed to produce sufficient evidence to support its claim that the underlying action was not arguably meritorious

10

when pled, and there was no evidence that the defendant's subjective state of mind was malicious. With respect to the requirement of probable cause to bring a lawsuit, the court stated: "'"Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ."'" [Citations.] Accordingly, there is probable cause if, at the time the claim was filed, 'any reasonable attorney would have thought the claim tenable.' [Citation.] Plainly, a claim that appears 'arguably correct' or 'tenable' when filed with the court may nevertheless fail . . . for reasons having to do with the sufficiency of the evidence actually adduced as the litigation unfolds. As defendants point out, every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled." (*Id.* at pp. 742-743, fn. omitted.)

As to Stocker, an attorney may be liable for malicious prosecution if he lacked probable cause to initiate the action or continued to prosecute the action after discovering the action lacked probable cause. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970.) Stocker provided a declaration stating that before initiating the underlying action, he had interviewed both Wrens and their real estate agents and had obtained and reviewed the offers and counteroffers for the purchase of the property, the disclosure statement, the title report, escrow instructions and correspondence, and the deed for the Sprint easement. Stocker declared he had spoken with counsel for the Lewises and had conducted legal research and analysis regarding the claims alleged. The Wrens had been referred to him as clients, and he had no prior relationship with them or with the Lewises.

11

As to Nancy Wren, the Lewises argue that she was not a record owner of the property because she quitclaimed her interest in the property to her husband, and she thus lacked standing as a plaintiff in the underlying action. However, in the underlying action, Nancy's claim asserted that the Lewises made misrepresentations and concealed facts during the course of the real estate transaction. Those claims did not depend upon her being an owner of record of the property.

In light of the disputed material evidence relating to disclosure of the easement, we conclude the Lewises have failed to show that probable cause was lacking to bring the underlying action.

### F. Evidentiary Rulings

The Lewises contend the trial court erred in ruling on the admissibility of evidence. Specifically, the Lewises contend the trial court improperly took judicial notice of the contents of documents in the record.

A court may take judicial notice of the existence of documents in a court file, but may not take judicial notice of the contents of such documents other than orders, findings of fact and conclusions of law, and judgments. (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.) However, to support their argument on appeal that the trial court's taking judicial notice was improper, the Lewises merely cited pages 509 to 570 of the clerk's transcript and listed some 20 exhibits by number. They completely failed to identify the specific contents of any such documents or any specific facts or propositions of which the trial court purportedly took improper judicial notice. It was the Lewises' responsibility, not

12

this court's, to identify and explain alleged errors. (*Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1271 [parties' failure to "specifically quote or otherwise fully identify the evidence they refer to" amounted to a waiver of their contention that the trial court erred in its evidentiary rulings].)  We conclude the Lewises have forfeited their challenge to the trial court's evidentiary rulings.  To the extent the Lewises base other arguments on the excluded evidence, those arguments are likewise forfeited.

## IV.  DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

RICHLI
J.

CODRINGTON
J.