Filed 1/22/14  Nolan v. Woods CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| MARY NOLAN et al.,<br><br>    Defendants and Appellants,<br><br>v.<br><br>DECLAN WOODS,<br><br>    Plaintiff and Respondent. | A135953<br><br>(Contra Costa County<br>Super. Ct. No. C12-00505) |

Plaintiff Declan Woods sued Louise Woods, his ex-wife, Mary Nolan, Woods's attorney (collectively, defendants), and two other individuals who, he alleged, were all involved in setting him up to be arrested for driving under the influence of alcohol (DUI). The scheme was allegedly concocted to give Louise Woods an advantage in their then-pending dissolution proceeding.  Woods and Nolan filed a special motion to strike the complaint as a Strategic Lawsuit Against Public Participation (SLAPP).  (Code Civ. Proc., § 425.16.)[1]  The trial court denied the motion to strike, and defendants appeal.  We affirm the order denying the anti-SLAPP motion because we conclude, as did the trial court, that the claims alleged in the complaint do not arise out of protected speech or petitioning activity.

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise expressly stated.

1

## THE COMPLAINT

In February 2012, plaintiff filed an action against Nolan, Woods, Christopher Butler, and Lauren Gard.[2]  His complaint alleged the following facts:

Plaintiff and Woods were married in 1991.  In March 2007, Woods filed a petition for dissolution of the marriage.  At the time the petition was filed, plaintiff and Woods had two minor children, ages 7 and 10.

Plaintiff is a general contractor by trade.  In July 2007, plaintiff was contacted by an individual named Lauren, who requested he provide an estimate for a kitchen remodel.  Plaintiff went to the address given by Lauren and spoke with her about potential ways to do the remodeling.  After their discussion, Lauren asked plaintiff where he was going; plaintiff responded he was going to Ed's Mudville Grill, then home.

Plaintiff went to the restaurant, and about 30 minutes later Lauren arrived with an unidentified female friend.  They asked if they could join plaintiff at his table and he agreed.  Lauren ordered a round of drinks, and struck up a conversation with plaintiff.  Later Lauren suggested they go to a club for more drinks; plaintiff agreed.  At the club Lauren "insisted that plaintiff drink shots of hard alcohol," and she continued to order rounds of drinks.  Lauren also became increasingly flirtatious with plaintiff and at one point "jumped into plaintiff's lap and began kissing him on the lips."  Plaintiff had to push her off his lap to stop embarrassing him.

After several rounds of drinks, Lauren suggested that plaintiff follow her to her house to go "hot-tubbing," and he accepted.  Plaintiff got in his truck and began to follow Lauren who was driving her car.  Within a few blocks, plaintiff was stopped by police, who administered a field sobriety test and arrested him for DUI.

Plaintiff was immediately suspicious about these events.  He tried to call Lauren within days of the incident, but her phone was disconnected.  He also learned Lauren did not live at the address where he met her; rather, the home was for sale and Lauren did not have any right to be there when he met with her.  Plaintiff found an e-mail address for her

---

[2] Butler and Gard are not parties to this appeal.

2

and sent a message asking whether the incident had been set up. Lauren responded she had been hired by a private investigator to meet with plaintiff and get him intoxicated. Lauren did not identify the investigator or any other persons involved.

Plaintiff suspected that Woods had set him up. He confronted her about it several times over the next two years, and she always denied it. In one e-mail she wrote, " 'You are insane! How do you pay for someone to get a D.U.I.!?' "

In September 2007, plaintiff pled no contest to the DUI charge. Plaintiff's license was suspended, he was fined, and he was ordered to attend an alcohol awareness program. Plaintiff's and Woods's dissolution became final in November 2007.

In March 2011, plaintiff was contacted by a reporter for the San Francisco Chronicle. The reporter suggested that plaintiff may have been set up for his DUI. The reporter stated that other men involved in divorce proceedings had been set up by a private investigator named Butler at the request of the men's wives. According to the reporter, the scheme became known in the media as "Dirty D.U.I.'s" which were being orchestrated by Nolan to make male spouses "look bad" in order to gain an advantage regarding matters being litigated in divorce actions. Prior to March 2011, plaintiff knew nothing about Butler and "never even contemplated the possibility that Nolan, an officer of the court, had any involvement in the Dirty D.U.I. scheme."

In June 2011, plaintiff was interviewed by two F.B.I. agents who confirmed that Butler had hired Lauren to contact plaintiff, get him intoxicated, then ask him to follow her home. Butler observed plaintiff leaving the parking lot following Lauren, and called 911 to report him. Plaintiff later learned from other documents that Nolan had hired Butler to set up plaintiff to be arrested for a DUI during the pendency of plaintiff's and Woods's divorce proceedings. In the same documents, he learned Lauren's last name was Gard.

After the revelation that plaintiff had been the victim of a "Dirty D.U.I." scheme, in January 2012, plaintiff was allowed to withdraw his plea of no contest to the D.U.I. charge, and the charge was dismissed. Prior to the "Dirty D.U.I.," plaintiff had no

3

criminal record of any kind, "including no arrests or convictions for driving under the influence."

In the complaint, plaintiff alleged five causes of action against all defendants: negligence, intentional infliction of emotional distress, fraud, abuse of process, and false arrest/false imprisonment, with a "civil conspiracy enhancement." Plaintiff alleged that defendants' acts were "outrageous and unprivileged," and as a result "plaintiff suffered an arrest and criminal prosecution, severe stress, upset, humiliation, emotional distress and other damages." Plaintiff also sought punitive damages, alleging the acts were done with "malice, oppression, fraud, and/or conscious disregard for the rights and safety of plaintiff."

## THE MOTION TO STRIKE

Defendants filed an anti-SLAPP motion, contending that "the complaint arises from defendants' acts in furtherance of their constitutional right to petition through judicial proceedings and that plaintiff cannot establish probability of prevailing on its [sic] claims." According to defendants, they were being sued for their *communications* to one another which were "directly related" to issues in the pending dissolution proceeding, bringing the action within the anti-SLAPP statute. Defendants further argued that the communications were protected by the litigation privilege and therefore plaintiff could not establish a probability of prevailing on the merits. In the alternative, defendants asserted that plaintiff could not prevail because his claims were barred by the doctrine of unclean hands, by the statute of limitations, and by the failure to state a cause of action.

Defendants also filed a demurrer to the complaint.

The demurrer and special motion to strike were heard together. The trial court denied the special motion to strike, concluding that the gravamen of plaintiff's action was not that defendants communicated among themselves on matters relating to the divorce proceedings, but rather that defendants "engaged in a scheme to entrap [plaintiff] into driving under the influence in order to gain an advantage," and therefore the action did not arise out of protected activity. With respect to the demurrer, the court overruled the demurrers to the causes of action for negligence, intentional infliction of emotional

4

distress and fraud, but sustained without leave to amend the causes of action for abuse of process and false arrest/imprisonment.

Defendants appealed from the trial court's "Decision on Motions and Amended Decision on Motions."  As is made clear in the Notice of Appeal and the Appellants' Opening Brief, however, the appeal is only from the denial of the special motion to strike.

## THE LEGAL PRINCIPLES

Section 425.16 provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  An "act in furtherance of a person's right of petition or free speech" includes "any written or oral statement or writing" made in an official proceeding or "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subds. (e)(1), (e)(2).)  The anti-SLAPP statute was enacted to prevent and deter lawsuits that "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," (§ 425.16, subd. (a)) and provides "an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims" arising from the exercise of those constitutional rights.  (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186 (*Martinez*); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311–312.)

An anti-SLAPP motion requires the court "to engage in a two-step process.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).)  Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  (*Ibid.*)

Only those causes of action "arising from" the defendant's protected speech or petitioning activity are subject to a special motion to strike.  (§ 425.16, subd. (b)(1).)

5

"[T]he 'arising from' requirement is not always easily met. [Citations.]" (*Equilon Enterprises, supra,* 29 Cal.4th at p. 66.) It is not enough that an action was filed after protected activity, or in response to protected activity, or even in retaliation for protected activity. (*Ibid.*; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–78.) Instead, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati, supra,* at p. 78.)

Additionally, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez, supra,* 113 Cal.App.4th at p. 188.)

"The trial court's determination of each step [of the process] is subject to de novo review on appeal." (*Martinez, supra,* 113 Cal.App.4th at p. 186.) " '[W]e apply our independent judgment to determine whether [plaintiff's] causes of action arose from acts by [defendants] in furtherance of [defendants'] right of petition or free speech. . . . [Citations.]' " (*Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 608–610, quoting *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645, italics omitted.)

### APPLICATION OF THE LEGAL PRINCIPLES

Applying the principles we have just set forth, we agree with the trial court that defendants have failed to make the threshold showing that the causes of action alleged in the complaint arose out of conduct that is protected under the state or federal constitutions. As we explain, the alleged wrongful acts on which the claims are based were defendants' concerted efforts to set up plaintiff to be arrested for a DUI, and this conduct cannot be characterized as a valid exercise of defendants' constitutional right to speech or to petition.

In attempting to bring their actions within the anti-SLAPP statute, defendants argue, first, that Nolan hired Butler (through her paralegal) for the sole purpose of

6

surveilling plaintiff to determine whether he was working, and for whom. Defendants argue this was protected activity because plaintiff was seeking spousal support from Woods in the dissolution proceeding. As authority, defendants rely on *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1068, in which the court held that an attorney's hiring of a private investigator to determine whether the City Attorney had a conflict of interest was protected activity.

Defendants' point might be well taken if plaintiff had alleged that defendants were liable to him for damages as a result of Nolan hiring Butler to conduct surveillance of his work activities for legitimate litigation purposes, such as to investigate plaintiff's income-producing capacity. But he did not. Plaintiff alleges, rather, that Woods, Nolan, Butler, and Gard engaged in a concerted plan to set plaintiff up to be arrested for a DUI. As we discuss below, a scheme to have an opposing party arrested for a crime is not a legitimate litigation activity. Accordingly, *Tichinin* and the other cases cited by defendants, involving litigation-related communications, do not apply. (See *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058–1059 [statute applied to fraud cause of action based on factual assertion pertaining directly to issues in dispute in litigation]; *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 610–612 [statute applied to cause of action based on contents of report prepared at the request of defense counsel in response to plaintiff's discovery request].

Defendants next contend that each cause of action alleged by plaintiff "arises out of protected activity because [plaintiff's] claim is based entirely on alleged communications between Nolan as [Woods's] counsel and Butler, and supposedly Gard [and that these] communications [were] made in connection with an issue under consideration or review by a judicial body." Defendants reason that "liability hinges on alleged communications by Nolan, as [Woods's] counsel, to help further [Woods's] interests in the dissolution proceeding by Nolan allegedly communicating instructions to Butler to set [plaintiff] up to get a DUI to gain an advantage in the divorce proceedings." Further explaining their theory defendants contend that plaintiff "can only point to communications by Nolan as [Woods's] counsel to Butler to link her to the alleged set-

7

up. Nolan does not deny she asked Butler to surveil [plaintiff.] That is no evidence she asked Butler to set [plaintiff] up. Though plaintiff may allege it was Nolan's communication that somehow resulted in his DUI, her communications to Butler to investigate him were protected activity." This argument is flawed in at least three ways.

First, as we have noted, it does not matter that Nolan claims to have hired Butler to surveil plaintiff only for purposes of gathering evidence on the issue of spousal support. In determining the first prong of a special motion to strike we are not concerned with disputed factual issues, or whether plaintiff can prove the allegations of his complaint. The sole question before us at this juncture is whether the acts alleged in the complaint are of the type that fall within the enumerated categories of section 425.16. (*Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) Accordingly, Nolan's contention that her hiring of Butler is "no[t] evidence she asked Butler to set [plaintiff] up" is irrelevant to the threshold issue.

Second, the fact that defendants would necessarily have communicated with each other in order to accomplish their scheme does not mean that the *communications* were the acts on which the complaint is based. Clearly they were not. It is not alleged that defendants are liable to plaintiff because they communicated with one another. It is alleged, rather, that defendants are liable for the actions of Gard and Butler in setting up plaintiff for a DUI, and that Gard and Butler were acting as agents of Nolan and Woods. The allegation that all defendants "agreed and intended" that the scheme be carried out relates not to the underlying tortious conduct, but to the conspiracy enhancement. (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215 [in deciding whether an action arises out of protected activity court must distinguish between speech or petitioning activity that is mere evidence of liability and speech or petitioning activity that is the basis for liability].) But even if defendants' *communications* were the basis for plaintiff's claim, the anti-SLAPP statute still would not apply, because the communications among them were not "written or oral statement[s] or writing[s]" made in an official proceeding or made in connection with an issue being considered in an official proceeding. (§ 425.16, subds. (e)(1), (e)(2).) Rather

8

they were, according to the complaint, communications made for the purpose of setting up plaintiff for a DUI arrest.

Third, we flatly reject defendants' argument that setting a "Dirty DUI" trap for one litigant in order to achieve an advantage for the opposing litigant is an "act in furtherance of the person's right of petition or free speech under the United States or the California Constitution. . . ." (§ 425.16 subd. (b)(1).) Although petitioning activity—the dissolution proceedings—is "part of the evidentiary landscape" of the complaint (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272), the gravamen of plaintiff's claims is that defendants engaged in tortious conduct that was unrelated to actual petitioning activity. "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Id.* at p. 1272.)[3]

The fact that a complaint mentions or describes litigation in relation to the causes of action alleged does not mean the complaint arises out of the litigation. Thus, for example, in *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, the plaintiff sued a law firm seeking to enjoin it from representing adverse parties in a pending action because the law firm had previously represented the plaintiff in a related action. (*Id.* at pp. 1620–22.) The complaint included allegations describing confidential information the plaintiff had disclosed to the firm

---

[3] Defendants attempt to distinguish *Hylton* by arguing that "here, the complaint does not merely *allude* to protected activity, but singularly focuses on it. [Plaintiff's] complaint rests solely on the allegation that Nolan, on behalf of [Woods] communicated something to Butler," *i.e.*, the instruction to set him up for a DUI. Thus, defendants argue, "it is a communication which is central—not incidental—to his claim. [¶] Without the communication, [plaintiff] cannot link Nolan or [Woods] to the alleged DUI set-up, which makes it more than incidental." This argument is repeated at length in defendants' reply brief. But it matters not at all whether plaintiff's claims against Nolan and Woods cannot be *proven* without evidence of the communication. The question is whether the complaint is *predicated* on the act of communicating. As we have concluded, it is not.

9

during the prior action, and describing the similarity of the issues in the prior and pending actions. (*Id.* at pp. 1620–21.) The law firm filed a special motion to strike, contending the complaint was based on the firm's "acts . . . in furtherance of its right of petition and free speech." (*Id.* at p. 1622.) The trial court agreed, and granted the motion. (*Id.* at pp. 1620, 1624.) This court reversed, explaining that the gravamen of the complaint was not the firm's representation of the adverse parties in litigation, but rather, the firm's breach of fiduciary duty to its former client, which is not protected activity. "[T]he principal thrust of the misconduct averred in the underlying complaint is the acceptance by [the firm] of representation adverse to [plaintiff]. To the extent the complaint refers to events taking place during [the firm's] participation in the [prior] [l]itigation, its evident purpose is to support the conclusion that the two matters are substantially related. . . . Thus, reference to protected activity is only incidental to the principal thrust of the complaint." (*Id.* at p. 1628; see also *Freeman v. Schack* (2007) 154 Cal.App.4th 719 [action against lawyer for abandoning one plaintiff and representing another plaintiff in the same litigation does not arise out of protected activity]; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [breach of fiduciary duty lawsuit "may follow litigation pursued against the former client, but does not arise from it."].)

Here, defendants argue that the complaint arises out of protected activity because liability hinges on "communications" between Woods and Nolan "to help further [Woods's] interests in the dissolution proceeding by allegedly communicating instructions to Butler to set [plaintiff ] up to get a DUI to gain an advantage in the divorce proceedings." We cannot see how this qualifies as valid petitioning activity. As has been painstakingly explained in many cases, "[i]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of defendant's right of petition or free speech." (*Gallanis-Politis v. Medina, supra,* 152 Cal.App.4th at p. 610.) We know of no authority, and defendants cite none, holding that allegedly tortious conduct *independent* of a court proceeding is nonetheless "protected activity" merely because the tortfeasor intends the results to benefit one party in pending litigation. Indeed, such a principle would be perverse. There is no constitutionally

10

protected right to gain an advantage in a judicial proceeding based upon extrinsic tortious conduct.

Defendants contend, finally, that the trial court relied on inadmissible evidence in finding that plaintiff's claims did not arise out of protected activity; they assert that the declarations submitted on plaintiff's behalf in opposition to the anti-SLAPP motion contain hearsay and privileged information. Defendants' premise is incorrect. Plaintiff did not introduce evidence to support his opposition to the *first prong* of the anti-SLAPP analysis, and there is nothing in the trial court's statement of decision indicating it relied on any evidence to determine whether plaintiff's claims implicated defendants' constitutional rights. Rather, the court relied on the allegations of the complaint itself in rejecting defendants' contention that the claims were based on "communications . . . in connection with the pending dissolution proceeding." The trial court concluded that the gravamen of the action "is not that the surveillance was effected by communications from Nolan during divorce proceedings, or that Nolan . . . conducted an investigation into plaintiff's activities for purposes of the divorce proceeding. . . . Instead, the gravamen of Plaintiff's action . . . is the alleged scheme to entrap him into driving under the influence in order to gain an advantage." This ruling does not reflect consideration of any evidence proffered by plaintiff.

## DISPOSITION

The order denying the special motion to strike is affirmed.

11

_____

Rivera, J.

We concur:

_____

Reardon, Acting P.J.

_____

Humes, J.