Filed 8/24/20  Bohm Wildish & Matsen v. Selfridge CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOHM WILDISH & MATSEN, LLP et. al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>LANCE A. SELFRIDGE et. al.,<br><br>    Defendants and Appellants. | G058327<br><br>(Super. Ct. No. 30-2019-01075384)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed.

Nemecek & Cole, Mark Schaeffer and Marshall R. Cole for Defendants and Appellants.

Bohm Wildish & Matsen, James G. Bohm, Gilbert A. Partida; Ulwelling Law, James K. Ulwelling and Lauren E. Saint for Plaintiffs and Respondents.

*        *        *

Lance A. Selfridge and Joseph K. Hegedus, attorneys at Lewis Brisbois Bisgaard & Smith, LLP (collectively henceforth Lewis Brisbois), appeal from an order denying their motion to strike the complaint for breach of fiduciary duty filed against them by James G. Bohm and the law firm of Bohm Wildish & Matsen, LLP (collectively Bohm Wildish), under Code of Civil Procedure section 425.16 (the anti-SLAPP law).

Lewis Brisbois asserts that while the trial court correctly ruled that Bohm Wildish's lawsuit arose out of activity protected by the anti-SLAPP law—i.e., the statements made by Lewis Brisbois lawyers against Bohm Wildish in the course of representing another client in litigation—it erred by failing to recognize the same activity was protected by the litigation privilege, and thus Bohm Wildish's lawsuit had no probability of success on the merits.

Bohm Wildish responds by asserting that the court's only error was in determining that the anti-SLAPP law applied in the first instance. Bohm Wildish claims that its cause of action against Lewis Brisbois arises out of a breach of the duty of loyalty Lewis Brisbois owed to Bohm Wildish as its client, and that the breach therefore occurred before Lewis Brisbois made any statements in court. We agree with Bohm Wildish and, although we disagree with the trial court's analysis, we affirm the court's order denying the motion.

## FACTS

This lawsuit arises out of a complicated, multi-part family dispute (the Sacher litigation). Initially, Bohm Wildish represented Fred Sacher, the family patriarch, in litigation against his son, Kenneth, to establish control over a family trust. In February 2017, Fred represented by Bohm Wildish, filed an elder abuse complaint against Kenneth and other family members, alleging he had been improperly pressured to sign various documents.

Kenneth and other family members, represented by attorneys from Lewis Brisbois, filed an answer to Fred's complaint in which they asserted, as an affirmative defense, that Fred was legally incapacitated and was acting pursuant to the undue influence of Bohm Wildish attorneys. Kenneth also filed a complaint on behalf of his mother against Fred, alleging financial elder abuse, fraud and related causes of action. That complaint repeated allegations of misconduct against Bohm Wildish attorneys.

In May of 2017, Fred and Bohm Wildish moved jointly to disqualify Lewis Brisbois from representing Kenneth and the other family members in any of the three proceedings; i.e., Fred's trust petition and elder abuse action, and Kenneth's elder abuse action on behalf of his mother. They contended Lewis Brisbois should be disqualified because it concurrently represented Bohm Wildish in an unrelated case, and thus its allegations of unethical conduct against Bohm Wildish in the current litigation breached its duty of loyalty to its client. They also represented to the court that they would withdraw the disqualification motions if Lewis Brisbois would agree to refrain from direct attacks against Bohm Wildish in the litigation; Lewis Brisbois refused.

The trial court granted the motions, concluding that Bohm Wildish remained a current client of Lewis Brisbois in an unrelated case, and that the Lewis Brisbois representation of Kenneth and other family members against Fred had included "numerous, direct attacks on the professional integrity of another . . . client." We affirmed that order on appeal. (*Sacher v. Sacher* (June 3, 2019, G055822) [nonpub. opn.].)

In June 2019, Bohm Wildish filed a complaint against Lewis Brisbois, alleging a single cause of action for breach of fiduciary duty. The complaint detailed the facts of the Sacher litigation, the factual allegations made by Lewis Brisbois against Bohm Wildish, and Bohm Wildish's demands that Lewis Brisbois either withdraw from representing Kenneth, or agree not to make such allegations against it going forward. The complaint cited former Rule 3-310(c) of the State Bar Rules of Professional Conduct

3

(now Rule 1.7) as reflecting an attorney's duty of loyalty to a client, and referred to the course of conduct engaged in by Lewis Brisbois as "repeatedly and egregiously breach[ing] their fiduciary duty of loyalty owed to current clients."

Specifically, the complaint alleges that "[s]hortly after taking on representation of Kenneth Sacher . . . in the Sacher Family Litigation, [Lewis Brisbois] adopted a litigation strategy that included attacking the professional and ethical abilities of their very own clients, [Bohm Wildish], which attacks were made to advance the interests of [Lewis Brisbois's] other clients in the Sacher Family Litigation." The complaint also alleges that Lewis Brisbois "breached their fiduciary duty of loyalty owed to [Bohm Wildish] by committing . . . acts" that included but were not limited to "accusing [Bohm Wildish] of committing grievous ethical violations" and "refusing to withdraw as counsel despite the obvious, concurrent conflict of interests."

Lewis Brisbois responded to the complaint by moving to strike it under the anti-SLAPP law. It argued that the cause of action alleged against it "consists entirely of communications made by [Lewis Brisbois] in pending litigation, and thus, the alleged wrongful conduct is based on constitutionally protected activity under § 425.16," and that Bohm Wildish could not demonstrate a probability of prevailing on the merits because "the communications are absolutely privileged under Civil Code § 47(b) and the Complaint is barred by the statute of limitations in CCP § 340.6."

Bohm Wildish opposed the motion, arguing that the breach of fiduciary duty by Lewis Brisbois "arose the moment [Lewis Brisbois] determined that in order to effectively represent one client, . . . they would need to attack another current client to whom they owed a duty of loyalty." Bohm Wildish also disputed the contention that the statements made in court by Lewis Brisbois were protected by the privilege set forth in Civil Code section 47, subdivision (b), asserting that the privilege "does not apply to an attorney's alleged breach of fiduciary duty," and claimed that the statute of limitations on its claim was tolled while Lewis Brisbois continued to represent it.

4

The trial court denied the motion. In its ruling, the court relied largely on *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153 (*Fremont Reorganizing*). In that case, a company sued its former in-house counsel for breach of fiduciary duty based on the attorney's revelation of client misconduct to the Insurance Commissioner. The appellate court reasoned that the anti-SLAPP law applied because the attorney's alleged liability arose from his statements in connection with a judicial proceeding, but also that the statements were not governed by the absolute privilege set forth in Civil Code section 47. (*Id.* at p. 1172.)

In denying the motion, the trial court here reached the same conclusion. It first reasoned that although Bohm Wildish's cause of action was characterized as alleging a breach of a fiduciary duty, the specific wrongdoing alleged was that "defendants breached their professional duties they owed to plaintiffs by making the statements in the Sacher litigation." Thus, the cause of action arose out of protected speech that was entitled to the protections of the anti-SLAPP law. Nonetheless, the court found Bohm Wildish had demonstrated a likelihood of success on the merits because "'the litigation privilege is inapplicable in an action by a former client against an attorney for breach of professional duties.'"

## DISCUSSION

1. *The Anti-SLAPP Law*

The anti-SLAPP law provides a summary mechanism to test the merit of any claim arising out of a defendant's protected speech or petitioning activities. The law authorizes courts to strike any cause of action which falls within the statute's purview, if the plaintiff cannot demonstrate a probability of prevailing on it. (Code Civ. Proc., § 425.16.) "Attempting to protect against 'lawsuits brought primarily to chill' the exercise of speech and petition rights, the Legislature embedded context into the statutory preamble, 'declar[ing] that it is in the public interest to encourage continued participation

5

in matters of public significance.'" (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 143 (*FilmOn.com*).)

"Because our 'primary goal is to determine and give effect to the underlying purpose of' the anti-SLAPP statute" we will "liberally extend the protection of the anti-SLAPP statute where doing so would 'encourage continued participation in matters of public significance,' but withhold that protection otherwise." (*FilmOn.com, supra*, 7 Cal.5th at p. 154.)

When a party moves to strike a complaint on the basis of the anti-SLAPP law, the court engages in a two-step process in determining whether a defendant's motion to strike should be granted. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Then, only if the court finds the defendant has made that required showing, the burden shifts to the plaintiff to demonstrate "there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1); *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 565.)

We review de novo an order made pursuant to the anti-SLAPP law. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 ["Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal"].)

2. *The Protected Activity Prong*

The anti-SLAPP law applies only to "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free

6

speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).)

The statute defines an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" to include specific categories of speech and petitioning activities, including: (1) any statements or writings made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any statements or writings made in connection with an issue under consideration or review by any such body or official proceeding; (3) any oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest. (Code Civ. Proc., § 425.16, subd. (e)(1-3).)

A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity. (*Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 67.) A cause of action does not "arise from" protected activity simply because it is filed after protected activity took place. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77.) The fact "[t]hat a cause of action arguably may have been triggered by protected activity" does not necessarily mean that it arises from such activity. (*Id.* at p. 78.)

As our Supreme Court explained, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.) In other words, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid.*) And "[i]n deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Id.* at p. 79.)

7

In this case, the wrongful act by Lewis Brisbois which gave rise to Bohm Wildish's cause of action was its agreement to represent a client whose contention was that Bohm Wildish itself—as opposed to Bohm Wildish's client—had engaged in wrongdoing. This is because a "fundamental value of our legal system is the attorney's obligation of loyalty. Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Ca1.4th 1135, 1146.) Thus, "if an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a . . . per se rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." (*Id.* at p. 1147)

The stringency of this rule is illustrated in *Flatt v. Superior Court* (1994) 9 Cal.4th 275 (*Flatt*). In *Flatt* our Supreme Court concluded that when an attorney became aware the focus of a new client's legal malpractice case was a current client of her firm, that attorney was "required . . . to sever any professional relation with [the new client] promptly upon learning of the conflict" and without providing any subsequent advice regarding the case. (*Id.* at p. 281.) In *Flatt,* the attorney did just that, and was subsequently sued for malpractice by the now former client based on her alleged failure to advise him of the statute of limitations applicable to his contemplated malpractice claim against her firm's existing client. The Supreme Court explained that counsel, under these circumstances, had no duty to offer such advice, as doing so would have violated her duty of loyalty to the firm's first client. (*Id.* at p. 290.)

In contrast to the attorney in *Flatt*, Lewis Brisbois did not "promptly" sever its relationship with Kenneth when it knew (or should have known) of the conflict between him and Bohm Wildish. Instead, it refused to leave the case insisting on its right

8

to continue representing Kenneth as he attacked Bohm Wildish's professional performance. It was that decision, rather than any specific statement made in court, which constituted a breach of its duty of loyalty to Bohm Wildish. Indeed, the breach would have been established even if Lewis Brisbois had confined its representation of Kenneth to behind-the-scenes advice, and had never officially appeared in court on his behalf.

Several cases have made this point. In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 (*Benasra*) for example, the court explained that a client's claim against an attorney for breach of loyalty "occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client."[1]

Likewise, in *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732 (*Freeman*), the court concluded "that the principal thrust of the conduct underlying their causes of action is not Schack's filing or settlement of litigation, [but was instead] his undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them . . . ."[2] In *United States Fire Ins. Co. v.*

---

[1]   Lewis Brisbois contends *Benasra* is distinguishable because Bohm Wildish "admitted" it is not concerned about the Lewis Brisbois representation of Kenneth, but only the "statements in the Sacher actions that accused [Bohm Wildish] of wrongdoing in [its] representation of Fred." Thus, Lewis Brisbois contends the alleged breach in this case occurred only when it made those statements in court. We disagree. That characterization misconstrues Bohm Wildish's argument. Bohm Wildish's position is that while it would not be a breach of loyalty for Lewis Brisbois to represent a client whose interests are opposed to those of Bohm Wildish's *client*, it is a breach to do so if Lewis Brisbois intends to argue that the merits of the dispute turn on the alleged misconduct of Bohm Wildish itself.

[2]   Lewis Brisbois asserts that *Freeman* is inapposite because "[u]nlike the situation in *Freeman*, . . . Ken[neth] did not have any interests adverse to Bohm." Again we disagree. Kenneth did not only make allegations against his father, Fred, in the lawsuit; he also directly alleged wrongdoing by Bohm Wildish. Thus, Kenneth and Bohm Wildish are directly adverse *to each other* with respect to the merits of the case.

9

*Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628, the court reasoned "the misconduct averred in the underlying complaint is the acceptance by Sheppard Mullin of representation adverse to U.S. Fire. To the extent the complaint refers to events taking place during [the subsequent] Litigation, its evident purpose is to support the conclusion that the two matters are substantially related, therefore making Sheppard Mullin's disqualification in that litigation automatic. Thus, reference to protected activity is only incidental to the principal thrust of the complaint."

Finally, in *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, the court concluded "that respondents' causes of action do not arise from protected activity within the meaning of the anti-SLAPP statute. The foundation of each claim is the allegation that Sagaser chose to align himself with respondents' adversaries, in direct opposition to respondents' interests, thereby breaching duties of loyalty and confidentiality owed to them by virtue of a prior attorney-client relationship. Respondents' complaint specifically alleges that Sagaser violated the State Bar Rules of Professional Conduct, including rule 3–310, which is the principal thrust of their lawsuit." (*Id.* at p. 493.)

*Fremont Reorganizing, supra,* 198 Cal.App.4th 1153, the case relied upon by the trial court in concluding that a claim alleging breach of an attorney's duty of loyalty does arise out of petitioning activity, is factually distinguishable. In that case there was no allegation that the attorney (the plaintiff's former in-house counsel) had aligned himself with a new client whose interests conflicted with the plaintiff's. Instead, the allegation was that the former attorney had breached his duty of loyalty by disclosing detrimental information about his client to a regulator, in connection with an official proceeding. Thus, in *Fremont Reorganizing*, the alleged communication was itself the specific act of wrongdoing that gave rise to liability. In that factual context, we agree with the court's conclusion the anti-SLAPP law applied to the cause of action.

10

But in this case, as we have explained, the cause of action arises out of the decision made by Lewis Brisbois to align itself with Kenneth, and against Bohm Wildish, to whom it owed a duty of loyalty. That alleged breach was not dependent on any statements made by Lewis Brisbois as it represented Kenneth. While those statements may have been what triggered Bohm Wildish's lawsuit, that triggering effect does not demonstrate the cause of action arose from them.

In arguing otherwise, Lewis Brisbois contends that because Bohm Wildish's complaint alleges it was damaged by the statements made by Lewis Brisbois in court, it is those statements, rather than the more abstract breach of loyalty, which give rise to the cause of action. We disagree. In *Renewable Resources Coalition, Inc., v. Pebble Mines Corp.* (2013) 218 Cal.App.4th, 384 (*Renewable Resources*), an anti-mining nonprofit organization sued two mining companies and their attorney, alleging the defendants had improperly induced the nonprofit's fundraiser to sell them confidential information, and then used that information to prosecute a complaint against the nonprofit before a governmental agency. The trial court granted the mining companies' anti-SLAPP motion, concluding that although the nonprofit claimed its suit was based on the improper inducement of the fundraiser, its damage allegations demonstrated that the actual harm it suffered was a direct result of the mining companies' protected act of prosecuting the complaint. (*Id.* at pp. 396-397.) If that reasoning were affirmed by the appellate court, then *Renewable Resources* would support Lewis Brisbois's assertion.

The appellate court reversed, explaining that "to determine the applicability of the anti-SLAPP statute, we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct*." (*Renewable Resources, supra*, 218 Cal.App.4th at pp. 396-397.) In that case, the wrongful and injurious conduct was "that the Pebble defendants allegedly wrongfully purchased the Coalition's confidential documents . . . ." (*Id.* at p. 397.) That same reasoning, applied in this case, demonstrates that the injurious conduct by Lewis Brisbois was its breach of

11

loyalty to Bohm Wildish.  The statements Lewis Brisbois made in court and its other alleged acts of disloyalty are evidence that relate to potential damages flowing from that breach.

Because Bohm Wildish's cause of action arises out of Lewis Brisbois's breach of its duty of loyalty owed to Bohm Wildish, rather than out of any specific statements or actions in court, the cause of action is not subject to a special motion to strike under the anti-SLAPP law.

3.     *The Reasonable Probability of Prevailing Prong*

Because we have concluded that Bohm Wildish's cause of action does not arise from conduct protected by the anti-SLAPP law, we need not address the second prong of the anti-SLAPP analysis.

**DISPOSITION**

The order is affirmed.  Bohm Wildish is to recover its costs on appeal.


GOETHALS, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.

12