Filed 2/18/14  Walsh v. Latham CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MARK WALSH,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GARY LATHAM et al.,<br><br>        Defendants and Appellants. | A136016<br><br>(Sonoma County<br>Super. Ct. No. SCV 251041) |

Defendants Gary Latham and Rose Cruz-Latham (together, the Lathams) are alleged to have defamed plaintiff Mark Walsh by claiming, in Internet posts and a letter to their neighbors, that Walsh had twice made videotapes of the Lathams' teenage daughter.  Cruz-Latham combined the accusations with repeated characterizations of Walsh as a sexual deviant.  The Lathams moved to strike Walsh's complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute,[1] arguing their statements concerned a matter of public interest.  While the trial court agreed that the statements concerned a matter of public interest, it denied the motion because it concluded Walsh had demonstrated a probability of prevailing on his defamation claims.  We affirm solely

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)  In 1992, the Legislature, finding there had been "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" (Code Civ. Proc., § 425.16, subd. (a)), enacted Code of Civil Procedure section 425.16 to provide a remedy against such lawsuits.

on the basis of Walsh's demonstration, in the limited manner required by the anti-SLAPP statute, of a probability of prevailing.

## I. BACKGROUND

Walsh sued his next-door neighbors, the Lathams, in January 2012, asserting claims of libel and slander per se, negligence, and intentional infliction of emotional distress. The complaint alleged Cruz-Latham had made several Facebook posts and the Lathams had circulated a neighborhood letter, both falsely claiming Walsh had videotaped the Lathams' teenage daughter for purposes of his sexual gratification.

The Lathams moved to strike the complaint under the anti-SLAPP statute. The motion argued their conduct was protected speech on a matter of public interest because Walsh's conduct "constituted a potential threat to the safety and privacy of children in the neighborhood."

The motion was supported by a declaration from Cruz-Latham, stating that in early 2011 her 15-year-old daughter, N., said she had seen Walsh videotaping her from a second-story room in his home while she was walking outside. Sometime later, Cruz-Latham saw Walsh pointing a video camera at her while she was in her daughter's bedroom. At the time, Walsh was in the same second-story room of his home. Over a period of one or two days, Cruz-Latham saw the video camera in the window of the same room, pointed at her daughter's bedroom. On the basis of these incidents, Cruz-Latham became "worried about the safety and privacy of children and teenagers in the neighborhood." She posted "a number" of messages on her Facebook page for the purpose of alerting her neighbors to "potential behaviors about which they might be concerned."

The Facebook posts, attached to Cruz-Latham's declaration, began with the following February 17 post: "Ok my FB friends how do I handle this one?? Our next door neighbor was video taping [N.] from their upstairs window!!! So not ok!!! What would you do??" Posts on March 3 contained two photographs purporting to show a window in the Walsh home that looked into N.'s bedroom and a video camera on the window sill pointing into the bedroom. It claimed that the neighbor is "video recording

2

[N.] *again.*[2]  (Italics added.)  Subsequent posts on May 13 and 16 repeated that the neighbor had videotaped N.  In the course of the various posts, Cruz-Latham characterized Walsh as a "stalker[]," "SICKO," "perv," and a "fat ass loser[]" and associated these characterizations with his alleged videotaping of N.[3]

The declaration also attached copies of a letter sent by the Lathams to four unnamed neighbors.  After referring to long-standing disputes between the Lathams and Walshes, the letter states:  "To video tape our daughter for whatever reason was the final straw for us.  If it was your children I know you would also be justly outraged."  The letter repeated the claim Walsh had pointed a video camera into N.'s bedroom.

A declaration by Gary Latham described a confrontation with Walsh, during which Latham accused Walsh of videotaping his daughter.  Walsh reportedly responded:  "You're damn right I was videotaping your daughter.  That doesn't make me a 'perv.' "

Walsh's opposition argued the Facebook posts did not concern a matter of public interest, since they were not generally accessible to neighbors and were intended to further the Lathams' position in a boundary dispute with Walsh, and Walsh was likely to prevail on his claims of defamation.  The opposition was accompanied by declarations of the Walshes' neighbors confirming the Lathams' sending of the letter and Cruz-Latham's Facebook posts.  Two of the neighbors stated they were able to infer from the Facebook posts that Walsh was the subject, although his name was not mentioned.

Walsh submitted a declaration stating the Lathams had lived next-door to his house for eight years.  For some time the neighbors got on well, but in early 2011, a dispute developed over a common property line.  At the time of the alleged videotaping incidents, in February and March 2011, Walsh's wife was suffering from a serious health problem.  During that time, Walsh took a leave of absence from his job and spent all day

---

[2] The posts never referred to Walsh by name, but there is no argument that he was not the person to whom Cruz-Latham was referring.

[3] For example, in apparent response to posts by others, Cruz-Latham wrote: "Thank you for your support!!  Placing it on FB is something I CAN do and get the word out that we have a PERV in the neighborhood!!  It is NOT ok to set up a video camera and point it to my 15 yr olds bedroom!!!"

3

with her at the hospital, coming home "only to shower and sleep." It was not until May that Walsh learned about the Lathams' statements.

Walsh denied ever having taken any video images of the Lathams or their daughter. He also denied the occurrence of the conversation recounted in Latham's declaration. He claimed the video camera depicted in the photograph posted by Cruz-Latham had not been used in five years and explained he had moved it from a shelf to the window sill in early March while searching for a telephone number. Shortly after, he placed it back on the shelf. Walsh claimed N.'s bedroom window is located in the back of the Lathams' home and is not visible from the side of his house where the video camera was located on the window sill.

In a written ruling, the trial court held the Lathams had made a "threshold showing" that their statements arose from protected activity. It denied the motion, however, because it found that Walsh had demonstrated a sufficient probability of prevailing on his claims.

## II. DISCUSSION

The Lathams repeat in this court the arguments they made in the trial court. We find it unnecessary to reach the issue of "public interest" because we agree with the trial court that Walsh satisfied the anti-SLAPP standard for demonstrating a probability of success on his claims.

"[Code of Civil Procedure s]ection 425.16, subdivision (b)(1), provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'

4

[Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820 (*Oasis West*).)

While the ordinary practice is to address the issues of public interest and probable merit in sequence, a court may jump directly to the issue of probability of prevailing in appropriate circumstances. (*Oasis West, supra,* 51 Cal.4th at p. 820.)

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' " [Citation.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.] 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' [Citation.] If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West, supra,* 51 Cal.4th at p. 820.)

We review de novo an order granting or denying a motion to strike under the anti-SLAPP statute. (*Oasis West, supra,* 51 Cal.4th at p. 820.)

## A. *Fact v. Opinion*

The Lathams contend Walsh cannot prevail on his claims of defamation because their statements constituted nonactionable opinions, rather than provably false statements of fact.

" 'The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

special damage. . . .' [Citation.] [¶] ' "The sine qua non of recovery for defamation . . . is the existence of falsehood." [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. . . .' [Citation.] [¶] 'That does not mean that statements of opinion enjoy blanket protection. [Citation.] On the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. [Citation.] The critical question is not whether a statement is fact or opinion, but " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.' " ' [Citation.] [¶] 'To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact. . . .' [Citation.] [¶] 'The "crucial question of whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court. [Citation.]" [Citation.] "Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood. [Citations.]" [Citation.] The question is " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact. . . .' " ' " (*Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862–863 (*Sanders*).)

In the allegedly defamatory posts, Cruz-Latham repeatedly characterized Walsh as a "perv" or "pervert," a "SICKO," "not normal," and a "stalker[]," all terms implying sexual deviance. These characterizations might qualify as nonactionable opinion if they had been stated in the abstract. Throughout the Facebook posts, however, the characterizations were associated with descriptions of concrete behavior that, Cruz-Latham's posts made clear, were the basis for her charges of sexual deviance. In these posts, Cruz-Latham charged that on two occasions Walsh had videotaped N. from an upstairs window in his home. She repeatedly referred back to these charges in referring to Walsh a "perv" and other labels implying sexual deviance. A comment from May 15

6

makes an express connection between Walsh's alleged videotaping and her accusations of sexual deviance: "Only a PERV would video tape a teenage girl from his window."

The unmistakable implication is that Cruz-Latham based her opinion regarding Walsh's character on the fact that he had, on two occasions, videotaped her daughter from a window of his house that looks into the daughter's bedroom window. A reasonable finder of fact could readily conclude that whether Walsh had recorded videotapes of N. in this manner on two occasions is a provably false assertion of fact. (*Sanders, supra,* 219 Cal.App.4th at p. 862.) Accordingly, Cruz-Latham's statements are actionable to the extent these assertions of fact are false. (See, e.g., *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385–387 (*Franklin*); see similarly *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 428 (*Bently Reserve*) [where name-calling is combined with statements of fact about the plaintiff, the comments are actionable].)

The Lathams argue their communications were mere opinions because they did not expressly state, but only implied, that Walsh was making the videotapes for sexual gratification, analogizing their circumstances to those in *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534 (*Terry*) and *Franklin*. Even assuming the statements would not be actionable if the allegation of sexual gratification was merely implicit, a debatable claim, the premise of the argument is not correct. In addition to the multitude of strongly implicit charges that the tapes were made for Walsh's sexual gratification, Cruz-Latham *expressly* charged Walsh had been videotaping for purposes of sexual gratification when she posted, "Only a PERV would video tape a teenage girl from his window." Said differently, the videotaping could only have been done for a sexually deviant purpose.

*Terry* and *Franklin* are of no help to the Lathams. In *Terry,* an anti-SLAPP case on which they place primary reliance, two church leaders, a husband and wife, had engaged in an improper relationship with a young church member. (*Terry, supra*, 131 Cal.App.4th at p. 1539.) In an investigative report based largely on e-mails exchanged between the husband and the child, the church concluded the couple's

7

relationship with the child was inappropriate and characterized the e-mails as evidencing increasing physical contact and intimacy between the husband and the child. (*Id.* at pp. 1540–1542.) In suing for defamation, the plaintiffs contended the report had falsely accused the husband of having a sexual relationship with the child. The court found the plaintiffs had failed to show a likelihood of success on their claim of defamation because the report did not imply any provably false assertions of fact. (*Id.* at p. 1551.) As the court noted, the report did not actually accuse the husband of a sexual relationship. Rather, it stated the relationship was "inappropriate," an opinion that was based on the content of the husband's provably true e-mails, which were quoted in the report. Because the report did not suggest its conclusion was based on any other, undisclosed facts, the opinion was not actionable. (*Id.* at p. 1553.) Unlike the opinion of the defendant in *Terry,* the Lathams' claim of sexual deviance was based not on uncontroverted facts but on an allegation of videotaping that Walsh contends is false. It is therefore actionable. *Franklin* is not significantly different.[4]

Cruz-Latham argues her Facebook posts should not be regarded as actionable because they were published on an Internet Web site. While we realize the two cases cited by the Lathams, *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 697–698, and *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1162–1163, can be read to suggest that Internet communications are judged by a more relaxed defamation standard, other cases have rejected that suggestion. (See, e.g., *Sanders, supra*, 219 Cal.App.4th at pp. 864–865.) In *Bently Reserve*, we analyzed the law relating to defamation over the Internet and concluded, "while *Krinsky, Summit Bank*, and *Chaker* [*v. Mateo* (2012) 209 Cal.App.4th

---

[4] In *Franklin*, a case of commercial defamation, three e-mails accused the plaintiff of business torts. The first two were found nonactionable because the writer's charge of unlawful behavior, an opinion, was based on statements in government Web sites whose "existence, content, and layout were not in dispute in any material way," and not on any other implicit, provably false conduct. (*Franklin, supra*, 116 Cal.App.4th at pp. 378, 388–389.) The third e-mail was found nonactionable both because it made true statements and contained an opinion "too vague to be actionable." (*Id.* at p. 390.) For the reasons discussed above, the Lathams' communications were materially different.

8

1138] allow courts to dispense quickly with defamation claims arising from true rants and raves, they do not preclude the courts from taking serious Internet speech seriously. Internet posts where the 'tone and content is serious,' where the poster represents himself as 'unbiased' and 'having specialized knowledge,' or where the poster claims his posts are 'Research Reports' or 'bulletins' or 'alerts,' may indeed be reasonably perceived as containing actionable assertions of fact. [Citation.] And while 'generalized' comments on the Internet that 'lack any specificity as to the time or place of' alleged conduct may be a 'further signal to the reader there is no factual basis for the accusations,' specifics, if given, may signal the opposite and render an Internet posting actionable." (*Bently Reserve, supra*, 218 Cal.App.4th at p. 431.) Because we found the defendant's posts in *Bently Reserve* to "contain[] statements that could reasonably be understood as conveying facts," we rejected their characterization as nonactionable Internet speech. (*Id.* at p. 433.) Cruz-Latham's posts on Facebook were similarly meant to be taken seriously and, as discussed above, were based on very specific allegations of conduct. Their communication via the Internet does not justify the application of a different defamation standard.

## B. *Probability of Prevailing*

For purposes of the anti-SLAPP statute, in evaluating Walsh's demonstration of a probability of prevailing on his claims we must accept as true the evidence favorable to him without regard to its relative credibility or weight. We consider the Lathams' evidence only to determine whether it has defeated Walsh's evidence as a matter of law. (*Oasis West, supra,* 51 Cal.4th at p. 820.)

Regarding the libel cause of action, Walsh's declaration stated he had never taken any video images of any member of the Latham family and denied the conversation recounted by Latham. He further stated the video camera cited by Cruz-Latham had not been used in five years and had been placed on the window sill inadvertently. Finally, he said the window from which he allegedly pointed the video camera at Cruz-Latham does not face the window of N.'s bedroom, making it impossible for him to have videotaped N. while she was in her bedroom, as claimed by Cruz-Latham in her Facebook posts.

These statements make a prima facie case for the falsity of the Lathams' claim that Walsh had twice videotaped their daughter.

The Lathams contend that because Walsh does not deny ever having pointed a video camera at N., as opposed to actually recording her, he has not contradicted their evidence. In so doing, they confuse their current account of events with their allegedly defamatory statements. It is the latter, which constitute the basis for Walsh's claims of defamation, that must be proven false. Neither in the Facebook posts nor in the letter to neighbors did the Lathams state that Walsh merely pointed a video camera at N. Rather, they claimed he "video tap[ed]" her, or "record[ed]" her on two separate occasions. The claim of actual taping is significant, for it implies he was recording the scene for later viewing, a practice consistent with Cruz-Latham's claim of sexual deviance. By flatly stating he had never videotaped any of the Lathams, Walsh directly contradicted the provably false assertions of fact in the Lathams' allegedly defamatory statements and stated a prima facie case of success on the issue of falsity.[5]

The Lathams argue Walsh did not present any evidence to support his claim of slander. As Walsh points out, however, Cruz-Latham herself stated in a post that she had "talk[ed] to a reporter at the Press Democrat" about the alleged incidents. While it is true that, as the Lathams argue, Cruz-Latham did not specify the content of her conversation with the reporter, it may be inferred from the context that it was identical to the content of her posts. This is sufficient for purposes of the anti-SLAPP statute.

The Lathams argue the remaining two causes of action must fail because the claim of libel fails. (E.g., *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 34.) Because we find a sufficient probability of prevailing on the defamation causes of action, the argument provides no basis for dismissal of the claims of negligence and intentional infliction of emotional distress.

---

[5] The Lathams argue Walsh presented no "admissible evidence" that he did not engage in the conduct alleged by the Lathams. His own testimony that he never videotaped any of them would plainly be admissible and directly contradicts the Lathams' accusations.

10

## III. DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Banke, J.

_____
Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.